Tilghman C. J.
The greatest 'difficulty which I have found in this case has been to determine, whether the proceedings have been properly removed by writ of error. It is a proceeding in rem. by a ship carpenter against the body of the ship for work done and materials found! As long as we hád a state Court of Admiralty, suits of this kind were brought in that Court by virtue of an act of assembly, passed the 27th March, 1784. But the Admiralty jurisdiction of the state having been taken away since the adoption of the present constitution of the United States, the same proceeding against the ship which formerly took place in the Court of Admiralty, is now pursued in the Court of Common Pleas, by virtue of the act 9th of February, 1793. The whole? proceedings are different from the course of the common law, except, that the trial of disputed facts-is by jury. But then the facts being ascertained, the decree and execution are according to the civiblaw. Had there been a decree in this case, in the manner that there ought to - have been, I should have thdught that a'writ of error did not lie. But it *202 rather appears, that the Court intended to give a common law judgment, although it cannot be said, with certainty, what the judgment is, for after the entry of the verdict, in which the jury find for the libellant seven hundred and seventy-six dollars and ninety cents, and six cents costs, there is a short minute of judgment nisi, and no more. I am willing to consider this as a judgment, on which a writ of error lies, rather than put the parties to thp delay and expense of a removal in another form, especially as the proceedings must be reversed in whatever form they are brought before us. While this suit was depending, in the Court of Common Pleas, and before the trial by jury, an act of assembly was -passed (30th March, 1811,) by which a new Court was established by the name of “ The District Court for the, city and county of Phila- “ delphia.” This Court had jurisdiction of “ all civil pleas u and actions, real, personal, and mixed, where the sum id “controversy exceeded one hundred dollars;” and it was directed by the. act, that, from and after the first Monday in June, 1811; all suits and causes depending in the. Court of Common Pleas of the city and county of Philadelphia, where the sum in controversy exceeded one hundred dollars, should be transferred to the said District Court, there to be heard, tried, and. determined,, and, the original jurisdiction of the said Court of Common Pleas, in all civil actions where the sum in conti'oversy exceeded one hundred dollars, was thenceforth to cease and determine. The sum in controversy in this case exceeded one hundred dollars, and the action was certainly a civil one, though not in the common law form, so that the case falls dii'ectly within the words of the law, and I think directly within its intent, for I can see no- reason for a distinction between this and the usual common law actions. The,District Court was to have no criminal jurisdiction, but as to civil actions the only criterion of jurisdiction was the value of the matter in controversy. The Court of Common Pleas ought, therefore, to have sent the recox'd to the District Court, and all their proceedings after the first Monday in June, 1811, were erroneous. The plaintiffs in error have, assigned several errors, besides the want of jurisdiction. It is unnecessary to enter into the consideration of such of them -as concern the pleadings and the joining of the issue, because i presume the pleadings will be de novo in the District Court;.but as the same exception to the evidence of Williani *203 Brackley, which was taken in the Court of Common. Pleas, may probably be taken again in the District Court, it may be " proper to give, an opinion on it now. Willing ancl Curwen had given their note to Benjamin Philips for six hundred dollars, the balance of his account against the ship Portland, and the respondent in the Court of Common Pleas averred, that this note had been paid, and the account discharged. On the other hand, the libellant alleged, that the note had not been paid but renewed., by another note of the said Willing ,and Curwen, which renewed note was discounted in the Bank of the United States, and the money obtained from the Bank on the discount paid into the hands of the said Willing and Curwen by the said Philips, so that the balance of his account against the ship remained still unpaid. To prove this, the deposition of William Brackley was given in evidence, who swore, “ that the clerk of Willing and Curwen “ came to the house of Philips, ancl requested that Philips st would renew the note, and that the said Philips agreed to •“ renew it, and did renew it to oblige them.” This was objected to as hearsay evidence. The clerk, himself, it was said, ought to have been produced to prove, that he was sent by Willing and Curwen. I cannot perceive how this was hearsay evidence ; it had been proved, that the person who brought the new note was the clerk of Willing and Curwen, consequently he was their agent, and therefore his sayings and doings were matters of fact proper to be laid before the jury. The trusting him with the new note, signed by Willing and Curwen, was of itself sufficient proof of his authority to act for them so far as concerned that note. Another part of Brackley’s deposition was objected to, viz. his saying, that Philips gave him a check payable to Willing and Curwen, but ordered him not to deliver the check until he saw that the note had been discounted in the Bank of the United States« The objection is, that this was the declaration of the libellant, and therefore not evidence. But this also was matter of fact. The delivery of the check by Philips to his clerk, Brackley, and the orders accompanying that delivery are all one transaction. The reason for giving.this order is explained in another part of the deposition. Unless the note had been discounted, Philips would not .have had money ip bank to answer his check. The whole evidence tended to., shew, that Willing and Curwen. received the money raised *204 upon their note, and therefore, although they paid the note-when it fell due, no part of it was applied to the discharge of;Philips’s account against the ship Portland. There, is no f°rce> therefore, in the objection to the deposit!?*,.. But for defect of jurisdiction in the Court of Common Pleas, I am of opinion? that the judgment should be reversed. • The record must be sent back to the Court of Common Pleas, with directions to transmit the same to the District Court, where the cause is to be heard, tried, and determined.
Yeates J.
A preliminary question has been raised by the defendants’ counsel, that a writ of error will not lie in this case. While the jurisdiction continued in.the Court of Admiralty, as to vessels attached by any carpenter, or other workman employed in building, repairing, fitting, furnishing, or equipping such vessel, under the act of 27th March, 1784, I should hold, that a writ of error was- not sustainable. But when the state Court of Admiralty ceased to exist, and the jurisdiction in this particular was transferred to the Courts of Common Pleas, and questions of fact stated in writing arose, whereon issues were formed which come to be tried by a jury of the country, as in such Courts was usual and customary in other disputed facts, I conceive that a. writ of error is the proper remedy for the party supposing himself to be aggrieved. The attachment in such cases merely serves to bring in the parties to the suit. . The record and the parties are before the superior Court, who can do complete justice,. if any error has occurred which demands their interposition. In Drawne v. Stimpson, 2 Mass. Rep. 441. It was said, that although the proceedings in the Court of Common Pleas were not according to the course of common law, and therefore a writ of error was not the proper writ for the removal of the cause into a superior Court, yet the Court proceeded to quash the proceedings below, the record of the parties being before them by writ of error. Should a record be re- . moved by certiorari, when it ought to be by writ of error, the Court cannot, if there be error, render the right judgment. And in a subsequent case, Vandusen v. Comstock, 3 Mass. Rep. 187, a writ of error was considered as a certiorari. The defendants’ counsel have likened this case to proceedings in cases of divorce, and have cited Miller v. Miller, 3 Binn. 30, wherein this Court determined, that a writ of *205 error would not lie. The answer is, that the third section of the act of 2d April, 1804, expressly directs, that, after a final sentence, either party may appeal to the Supreme Court, in such a case.
They have also cited Ruhlman and others v. Rempublicam, 5 Binn. 24, wherein the Court quashed a writ of error to the Quarter Sessions, upon an appeal by supervisors of the roads, from a summary conviction by a justice of the peace, for neglect of duty. .It is true, that this Court recognised the distinction laid down in Grainvelt v. Burwell, 1 Ld. Raym. 469, (S. C. Carth, 494. Comy. Rep. 80. 1 Salk. 144. 263,) as to a Court newly instituted, which is impowered to proceed summarily, by methods unknown to the common law, and one under different circumstances, as to a writ of error lying on their judgments. But stress is also laid on the plain provisions of the act of 6th April, 1802, sect. 12, that the Sessions shall take such order on the appeal as to them shall appear just and reasonable, and the same shall be conclusive, 3 Sm. Laws, 517. Such order the Chief Justice observes, may be very different from the course of the common law. 3 Binn. 27. The nature of the case made a speedy decision necessary: the people would suffer while the cause was delayed. I freely admit, that the appropriate mode of reviewing civil law proceedings is by appeal to a superior tribunal; although while the jurisdiction respecting these liens remained in the state Court of Admiralty, no provision was made whereby a party supposing himself aggrieved, might entitle himself to a rehearing. But when the jurisdiction was transferred to the Courts of Common Pleas, on the state Court of Admiralty ceasing to exist, the general powers of the Supreme Court would necessarily be called into action, and hence it is, that we find a bill of exceptions sealed in this ease. It has been urged, that an appeal would be more conducive to justice than a writ of error, inasmuch as the case would be open to new proof on an appeal. But I cannot think this observation applicable, when the controverted facts have been decided by the general verdict of a jury. In such instances the only remedy which the party has, is by an application for a new trial to the Court who tried the cause, and and who we are bound to presume would exercise a sound discretion in their decision. Error cannot be assigned for the inferior Courts not having awarded a new trial, nor can *206 yje try the cause ourselves by a jury. Now the proceedings originated by attachment in. the Common Pleas, which wás ^ss°Ned by the stipulation entered into upon service of the writ, and the vessel discharged therefrom under sect. S. of the act of 1784. The judgment is not, therefore, in my apPre^ens'on 'in rem' hut for the precise sum found by the jury in damages, and the stipulation affords a complete remedy for the recovery thereof. I do not feel the force of several of the exceptions taken by the plaintiff’s counsel. I view the libel and answer which have been filed as a statement or declaration and plea in substance, wanting no necessary form. The libel states, that the ship owners were indebted to Philips in 600 dollars for work done and materials provided, to which is annexed a regular account of the debt and credits. The answer admits the work to have been done and the materials provided, but asserts that the 600 dollars was duly paid by the owners, by a certain promissory note, dated 17th February, 1809, which was discharged afterwards. The replication contains a flat denial of this fact, so that the parties were at issue on the plea of payment, which ,cannot be said to be immaterial. The issue thus joined by the counsel on both sides, on which the parties went afterwards to trial, must be presumed to have been done under the Court’s direction. The jurors, as is usual and customary in disputed, cases, ascertáined the fact, and assessed the damages. I see no reason whatever, why they were bound to state the facts specially and submit the legal inferences to the Court. If they did wrong, the proper remedy was by application to the Court to review what had been done. The deposition of William Brackley appears to me to be correctly legal. He was the clerk of Willing and Curzven, who owned two-thirds of the Portland at the time, and was sent by them to Philips with a request, that he would renew a particular note. Whatever they said or did, as ship owners, was proper evidence against Mr. Peters, who claimed under them. The views of Philips in agreeing to the proposition of Willing and Curzven, and the grounds on which he proceeded, became material for the consideration of the jury, when they were called to decide on that particular fact.
But the exception to the jurisdiction of the Court of Com.» mon Pleas who tried the cause, appears to me fatal. They' had jurisdiction in the first instance, when the attachment *207 issued returnable to September Term, 1809, but by the act of 30th March, 1811, (5 Sm. Laws, 224, sect. 2.) the original" 'urisdiction of the Court of Common Pleas of the city and county of Philadelphia, in all civil actions where the surtí in controversy exceeded 100 dollars, ceased and determined. Such causes were directed to be transferred to. the District Court, established by that law. Prior to the first Monday in June, 1811, the controversy appeared on record, that Philips claimed 600 dollars, and Mr. Peters, as the surviving owner of the ship, denied the existence of that debt, so that the case was brought-within the words of the act. The District Court was formed for the trial of issues in civil actions, where the sum in controversy exceeded 100 dollars. In cases of divorce and habeas corpus, under our act of 1785, there is no sum in controversy, and therefore th.e District Court exercises no jurisdiction. Those proceedings are conducted in a sum-mary manner before the Court. It is a matter of daily practice, that the District Court hears applications of artificers and material-men as to their liens on buildings. And upon my inquiry of the President of that Court, I received information, that in one case at least, he had determined in the case of a workman, under the law in question, where his demand exceeded 100 dollars.
I am of opinion, that the judgment of the Court of Common Pleas be reversed, for defect of jurisdiction, and that the record be remitted to the District Court for: trial,
Brackenridge J. concurred.
Judgment reversed.