The COMMONWEALTH *against* BEAUMONT.

### IN ERROR.

The judgment of the Court of Common Pleas quashing an inquisition in a case of lunacy, is revisable by this court. But in such a case, a writ of error does not lie. The process by which the proceedings are to be removed is a *certiorari*.

It *seems*, however, that the judgment of the Court of Common Pleas, after pleading to issue on a traverse of the inquisition, is revisable on a writ of error.

WRIT of error to the Court of Common Pleas of *Bucks* county.

In this case, a commission in the nature of a writ *de lunatico inquirendo* having issued against *John Beaumont,* an inquisition was returned on the twenty-second of *May,* 1833, finding that the defendant, " *John Beaumont,* aged seventy-five years, by reason of old age and long-continued sickness, has become so far deprived of reason and understanding as to be wholly unfit to manage his estate, and hath been so for the last eighteen months and upwards."

Exceptions were filed on behalf of the defendant to the proceedings of the inquisition, both in point of law and fact, and the court, after hearing, quashed the inquisition ; upon which the present writ of error was sued out."

*Randall* moved to quash the writ of error,

1. Because this court had no jurisdiction of the case, for which he cited *Gest's Case,* 9 *Serg. & Rawle,* 317.   *Righter* v. *Rittenhouse,* 3 *Rawle,* 281.

2. Because the exceptions filed in the court below depended upon facts which this court is not competent to decide.

*Ross* and *Kittera, contra,* cited 1 *Sm. Laws,* 139.   3 *Bl. Com.* 427.   2 *Madd. Ch.* 732.   *Moore* v. *Cooke,* 4 *Serg. & Rawle,* 231. *Cooke* v, *Reinhart,* 1 *Rawle,* 317.

The opinion of the court was delivered by

GIBSON, C. J.—By the eleventh section of the act of 1722, the judges of the Supreme Court are empowered to issue writs of *habeas corpus, certiorari,* and of error.   By the thirteenth, they are " to examine and correct all, and all manner of errors of the justices and magistrates of this province, in their judgments, process and proceedings in the said courts, as well in all pleas of the crown, as in all pleas, real, personal, and mixed; and thereupon to reverse or affirm the said judgments, as the law doth or shall direct."   Finally, it is declared generally, that " they shall minister justice to all persons, and exercise the jurisdiction and powers hereby granted, concerning all, and all and singular, the premises according to law, as fully and amply to all intents and purposes whatsoever, as the King's Bench,

(Commonwealth *v.* Beaumont.)

Common Pleas, and Exchequer at Westminster, or any of them, can do." The grant of these powers is confirmed by the sixth section of the fifth article of the Constitution, which provides that the Supreme Court and the several Courts of Common Pleas, shall have certain specified powers " *beside* the powers heretofore usually exercised by them." What then are the powers of the King's Bench, to say nothing of the other courts at Westminster, so broadly granted to the Supreme Court ? " The jurisdiction of this court," says Sir *William Blackstone,* " is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined here, or prohibit their progress below. It superintends all civil corporations in the kingdom. It commands magistrates and others to do what their duty requires in every case where there is no other specific remedy. It protects the liberty of the subject by speedy and summary interposition." 3 *Com.* 42. As then the Supreme Court has a general jurisdiction of the proceedings of all inferior tribunals, as regards their regularity and legality, what argument is there to make this particular one an exception to it ? It is said, the very section of the Constitution which confirms the previous grant of general powers to the Supreme Court, disposes specially of the subject of power over the persons and estates of those that are *non compotes mentis,* by committing it concurrently to the Supreme Court and the Common Pleas ; whence an inference, *quoad hoc,* of an equality of jurisdiction in all respects. If this equality were conceded, the decisions of the several Courts of Common Pleas would be precedents for the Supreme Court and for each other; or the decisions of each would furnish precedents but for itself—a consequence productive, in either aspect, of the wildest uncertainty. It is plain, however, that the clause in question has regard to original, and not appellate, jurisdiction ; for it is incredible, that the framers of the instrument should have intended to deprive the citizen, in a matter which peculiarly involves his liberty, of the high judicial protection which is so amply secured to him in the most trifling matter of property. Were the mere concurrence of jurisdiction to determine the question of parity, this court would be incompetent to revise the decisions of the District Court of the City and County of *Philadelphia.* Next, it has been said, that as the jurisdiction was originally a chancery one, and as a writ of error does not seem to lie to the law side of that court at this day, there is consequently neither writ of error nor appeal here; and this much is supposed to have been decided in *Gest's Case.* The inference from that case holds only as regards the instrument of removal ; for it may well be that a writ of error is not the proper process, and yet the judgment of the court below not be irreversible. The superintending power given by the statute and the Constitution, has respect to the court, and not to the nature of the proceeding, further than concerns the form of the appellate process; and even that is to be determined by the form it has received from the structure of our judiciary, and not the form it had originally.

(Commonwealth *v.* Beaumont.)

Thus, principles of equity infused into what are elsewhere common law actions, become the subjects of exception and error, for the plainest of all reasons, that equity is a part of our law ; and even the remedy to recover a legacy which which was originally a subject of chancery jurisdiction, having taken the shape of an action at law here, is attended with all the incidents of one. The same thing may be affirmed of many other substitutes for a bill in equity. As I am unable to recal the precise ground of the decision in *Gest's Case*, I the more regret that the Chief Justice happened to depart from his usual practice in plain cases, of embodying the substance of the opinion in a *per curiam* note of it; but I venture to assert, that neither he, nor Mr. Justice DUNCAN, was so unmindful of what was due to the forum, as to surrender one of its undoubted prerogatives. The report contains no evidence of such a surrender. The motion to quash was indeed advocated on the ground of the English practice, according to which, the writ of error, being the only process of removal from the law side of the Chancery into the King's Bench, and having been superseded in that particular by an appeal to the king in counsel, ought, it was said, to be considered as exploded here ; and as no appeal is expressly given to the Supreme Court, it was contended that nothing can be substituted for it by implication. But can it be collected from the report, that the writ was quashed because the judgment was not the subject of revision ? Were an appeal given to the Supreme Court as a substitute for the appeal from the chancellor to the king, it might have been supposed that recourse to it alone could be had, as in the case of a libel for divorce; but no such substitute being provided, it was natural to refer the subject to the general corrective powers of the court in the last resort, the form of the process being determinable, as in other cases, by the nature of the proceeding. A writ of error is the proper process of removal, where the primary tribunal is a court of record, and the proceedings to be removed either were according to the course of the common law in the first instance, or have assumed a common law shape subsequently; but where they are summary, or the magistrate is not the judge of a court of record, it is a *certiorari.* Thus the latter is the proper process to remove the proceedings of justices of the peace, and even the judgment of the Quarter Sessions where it has been rendered in a summary way pointed out by statute, as in the case of an appeal from a conviction by justices of the peace for refusing to assume the office of supervisor of the highways. *Ruhlman* v. *The Commonwealth,* 5 *Binn.* 24. Where, however, the proceedings have taken a common law form in a court of record, whether they originated there or not, the judgment can be removed but by writ of error : as where an action brought before a justice of the peace has been determined on an appeal to the Common Pleas; or even where the regularity of his proceedings has been determined on a *certiorari,* which is not a prosecution of the proceedings before the justice, but an original and independent process of review according to the course of the common

(Baer *v.* Kistler.)

law.   *Clark* v. *Yeat*, 4 *Binn.* 185.   *Cook* v. *Reinhart*, 1 *Rawle*, 317. On the same principle was adjudicated *The Ship Portland* v. *Lewis*, 2 *Serg. & Rawle*, 197, which was the case of an issue to try a fact controverted in a libel, for work and materials furnished to a vessel, under the act of 1784; and *The Schuylkill Navigation Company* v. *Thoburn*, 7 *Serg. & Rawle*, 411, which was an appeal from the decision of an inquest awarded by the same court on a petition for the assessment of damages, and which had taken the form of an action.   The difficulty in respect to the judgment in *Gest's Case*, however, is in the fact that the proceedings in lunacy were originally on the law side of the Court of Chancery, and therefore, it might be supposed, according to the course of the common law, which would interpose no obstacle to a writ of error here.   But it does not follow that all the proceedings of a court of record are according to the course of the common law, as is instanced in the appeal from the conviction of the supervisor of the highways, which was summarily determinable in the Quarter Sessions.   Instances of the same sort may be found in statutory grants of original jurisdiction; as in *Lewis* v. *Wallick*, 3 *Serg. & Rawle*, 410, which was the case of proceedings in a domestic attachment; and *Miller* v. *Miller*, 3 *Binn.* 30, which was a libel for divorce; in both of which it was determined that a writ of error does not lie.   It may be said, the jurisdiction in those cases was conferred by statute, and that it does not appear that the chancellor acquired his jurisdiction of lunacy otherwise than as the common law jurisdiction of the courts at Westminster was acquired at the dissolution of the *Aula regis*.   But the jurisdiction, however acquired, is an extraordinary one; and it is not wonderful that the appellate jurisdiction of the King's Bench should have been contested, and eventually relinquished.   The proceedings are certainly not in accordance with the ordinary forms of the common law known here; and having been conferred on the Common Pleas by the positive enactment of the Constitution, are revisable only by writ of *certiorari*.   According to the principle indicated, they would seem to be revisable by writ of error, after pleading to issue on a traverse of the inquisition; but having been quashed before they assumed an ordinary common law form, and not because they are exempt from examination here, we are of opinion that the motion be sustained.

Writ of error quashed.