## Borough of Little Meadows.

To authorize the Court of Quarter Sessions to incorporate a borough under the Act of 3d April, 1851, it should appear upon the record that there is a town or village to be incorporated, and that a majority of the freeholders therein petitioned for the incorporation.

The court has no jurisdiction to incorporate a territory of one and three-fourths miles square, a part of the lines of which run through a wilderness, and which contains no "collection of houses collocated after a regular plan in regard to streets and lanes."

The want of jurisdiction can be taken advantage of in any stage of the proceedings, and is not waived by an omission to interpose it in the court below.

APPEAL from the Quarter Sessions of *Susquehanna county.*

[Borough of Little Meadows.]

On the 19th November, 1856, the petition of thirty-two persons was presented to the court, setting forth "that, in the opinion of your petitioners, the interests of the citizens of Apolacon township, and more particularly those within the following described boundaries, will be greatly enhanced by the incorporation into a borough of the following described tract or territory, viz.: beginning at the north-west corner of the township of Apolacon (and also of the county of Susquehanna), and on the north line of the state of Pennsylvania, running along the said line south five degrees east, one mile and three-fourths of a mile; thence south two and a half degrees west, about one mile and three-fourths of a mile, to a road leading from the Apolacon creek road to Choconut creek; thence along and by the course of said road north five degrees west, one mile and three-fourths of a mile, to the line of Bradford county; thence along the line of said county about one mile and three-fourths of a mile to the place of beginning, to be called by the name, style, and title of The Borough of Little Meadows."

This petition was endorsed—

"Approved—G. MOSELEY, Foreman."

On the 20th January, 1857, the remonstrance of sixty-seven inhabitants of the township in which the proposed borough was situated was presented, denying the existence of any village at the place proposed to be incorporated.

On the 22d January, 1857, the second petition in favour of the borough as prayed for in the first was presented to the court, signed by fifty persons, giving the reasons why the incorporation of the borough was desired by the petitioners.

On the 29th January, 1857, endorsed on the petition, "Confirmed by the court." And on the 30th the court made an order for the holding of an election for borough officers, and appointed persons to hold the same.

Whereupon this appeal was taken; and it was assigned for error,

1st. It nowhere appears that a majority of the freeholders within the limits of the proposed borough signed the petition.

2d. There was no town or village in the proposed borough.

*R. B. Little*, for appellant, cited Act of April 1, 1834, § 2; Borough of West Philadelphia, 5 *W. & S.* 283, 2 *Casey* 473.

*W. & W. H. Jessup*, for appellees.

The opinion of the court was delivered by

WOODWARD, J.—The legislature, by the Act of 1st April, 1834, empowered the Quarter Sessions, with the concurrence of the grand jury, to incorporate towns and villages into boroughs, on

the application, in writing, of a majority of the freeholders residing within the limits of the same. The Act also required that the town or village to be incorporated should contain three hundred inhabitants; but this was taken away by the Act of 3d April, 1851. The latter act, however, dispensed with no other conditions of the prior act, but, on the contrary, reasserted them, in declaring that the power of the courts should be exercised "*as provided by law.*"

This was held to be very special legislation in the case of The Borough of West Philadelphia, 5 *W. & S.* 283, and not to be carried further than its words absolutely require.

To show that the Quarter Sessions had jurisdiction, it is necessary that it should appear somewhere upon the record that there was a town or village to be incorporated, and that a majority of the freeholders therein asked for it. Neither of these things appear here. How many freeholders there are was not stated; but thirty-two citizens signed the original petition, and sixty-five protested against it. A supplemental petition was presented with some fifty names, but in neither petition is it claimed that a majority of freeholders want the borough, or that there is any town or village to incorporate. A tract of land, one and three-quarter miles square, is laid out as the boundaries of the proposed borough, two of the lines of which, the petitioners admit, run for a considerable distance through a wilderness, but that they contain any "collection of houses, collocated after a regular plan in regard to streets and lanes," is not pretended.

The court then had no jurisdiction to incorporate such a district of country. The legislature never conferred it—never meant to confer it.

The size of the territory is not a question for us where the statutory conditions exist, as we held in the case of The Borough of Sewickley; but such extravagant dimensions as are assumed in this case, are a reason for insisting peremptorily that the statutory prerequisites shall appear to have been complied with.

It is said it is too late for the appellants to insist on these exceptions now, having waived them below. That would be a good reason for not reversing if the exceptions did not touch the jurisdiction. It is never too late to take advantage of a want of that.

The defect of jurisdiction is the ground on which the decree is reversed at the costs of the appellees.