# Middletown Road.

*Road law—Improvement of county roads— Constitutional law—Act of June 26, 1895.*

The Act of June 26, 1895, P. L. 336, providing for improvement of public roads is constitutional. The title is sufficient; it does not offend article 3, section 7, by being a local or special law, nor does it offend against article 9, section 1, providing for uniformity of taxation.

*Road improvement—Act of 1895—Alternative proceedings invalid.*

There is no warrant in the act of June 26, 1895, for a decree which leaves the particular road to be improved to be determined afterwards by the county commissioners.

*Road law—Act of 1895—Review by Superior Court.*

The appellate court is authorized to examine the proceedings of the court of quarter sessions, in any matter specially committed to it by statute so far as to inquire and determine the extent and limits of its power and the regularity of its exercises.

This jurisdiction is confined to an examination of the record proper for the purpose of determining whether the court below has kept within the limits of the powers conferred upon it, and has exercised them in conformity to law.

*Appeals—Failure to except below—Exception to general rule.*

To the general rule that the court below will not be reversed unless errors complained of have been called to its attention, there are well recognized exceptions. When a jurisdictional defect is apparent on the face of the record, the fact that one interested in, and affected by, the invalid order under the act of June 26, 1895, did not except in the court below, does not preclude him from appealing and assigning the matter for error.

*Road law—Proceedings—Act of 1895—Estoppel.*

A release " of and from all claims for damages " signed before the institution of proceedings, and the fact that a landowner joined in a petition for improvement of a road by a certain route, do not work an estoppel to prevent such person from opposing an alternative application to improve by one of two routes, and if he is an abutting owner on the other route which the commissioners claim the right to improve, he has a standing to raise the question as to the validity of the proceedings.

Argued May 18, 1900. Appeal, No. 77, April T., 1900, by R. F. Clever, from decree of Q. S. Allegheny Co., Dec. Sess., 1898, No. 4, confirming report of the grand jury in the matter of the petition of the commissioners of Allegheny county for permanent improvement of Middletown road. Before RICE, P. J.,

BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.
Reversed. Opinion by RICE, P. J.

Petition of the commissioners of Allegheny county for the permanent improvement of Middletown road. Before the court in banc.

### ESSENTIAL FACTS FOUND BY THE SUPERIOR COURT.

[On February 25, 1899, the county commissioners of Allegheny county presented their petition to the court of quarter sessions in which they set forth that they had resolved, in accordance with the provisions of the Act of June 26, 1895, P. L. 336, to improve a certain public road or highway known as the Middletown road " by one or the other of the following routes." Here followed a description of two distinct roads, or sections of roads, each being about three miles long, having different termini from the other, and touching the other at no intermediate point. On the map or plan submitted for our examination and in the argument before us one was called the "Upper Route" and the other the "Pine Hollow Route." The commissioners further set forth in their petition that they had caused to be prepared, and therewith presented the same for filing, "surveys and plans of said road or highway, and the proposed improvement thereof, showing any relocation, straightening, widening, extension or alteration thereof, together with an estimate of the cost or expense of the same."

Pursuant to the prayer of the petition the court ordered that the same be filed, and that notice be given by publication once a week for three weeks, that the petition would be laid before the grand jury on a day named, and if approved by the grand jury would then be presented to the court of quarter sessions for its approval, " the notice to substantially set forth and describe the line of the proposed improvement,". also that leave was granted any person interested to file exceptions to the granting of the petition.

The published notice conformed to the foregoing order, and, amongst other things, set forth the presentation and filing of the petition (this is the language of the notice), " for the permanent improvement of the public road or highway known as the Middletown road, by one or other of the following routes," describing them as they were described in the petition.

The petition was laid before the grand jury on the day named who reported amongst other things as follows: "That the application of the commissioners of the county for the improvement of the Middletown road, to wit: (here followed precisely the same description of the two roads as that contained in the petition and notice, but omitting the alternative words) "was laid before the grand jury, together with the surveys, plans, profile and estimate of expenses, and the said grand jury, after a careful examination and full investigation submitted to them, do hereby approve of the same, and respectfully certify their approval to your honorable court."

On March 7, 1899, the court confirmed the report nisi, to become absolute unless exceptions should be filed, or sufficient cause to the contrary should be shown within ten days. A month later the court made the following order: "And now, to wit: this day, April 8, 1899, it appearing to the court that no exceptions have been filed, objections made or cause shown to the contrary to the order made March 7, 1899, in the above entitled case, the proceedings and report of the grand jury are confirmed absolutely, and the court approves the proposed improvement of said Middletown road, as set forth in said proceedings, and decrees that said public road or highway as described in said proceedings shall be made, constructed and improved as set forth in the proceedings entered at said number and term of said court."

On September 16, 1899, Robert F. Clever, an owner of lands abutting on each of the roads or "routes" described in the proceedings, took this appeal.]

*Errors assigned* among others were (1) the act of assembly under which these proceedings were conducted is unconstitutional, being defective in title and repugnant to article 3, section 3 of the constitution. (2) The said Act of June 26, 1895, P. L. 336, is also unconstitutional, as violative of those provisions of article 3, section 7 of the constitution, which declares that "the general assembly shall not pass any local or special law regulating the affairs of counties," etc. (3) The said act is also unconstitutional as violative of that provision of article 9, section 1 of the constitution, which declares, "All taxes shall be uniform, upon the same class of subjects." (4) The

court was without jurisdiction, and the proceedings were irregular and void, being not in compliance with section 1 of said Act of June 26, 1895, P. L. 336, which provides that the act shall become effective only "when the county commissioners or a majority of them, by resolution duly adopted, deem it expedient so to do," because the record does not show that the commissioners or a majority of them have by resolution duly adopted deemed it expedient permanently to improve the Middletown road named in these proceedings. (5) The court was without jurisdiction and the proceedings were irregular, being not in compliance with the several sections of the act of 1895, the provisions of which contemplate a petition for a single road and a single proceeding throughout. (6) The court was without jurisdiction and the proceedings irregular, being not in compliance with the said act requiring that the commissioners, "shall cause to be prepared surveys and plans of said road or highway," for the reason that the surveys and plans of said road, on record, are the surveys and plans of two separate and distinct roads and joined at no point. (10) The court was without jurisdiction and the decree was irregular and void, being not in compliance with the said act requiring that "said application shall be approved and said court shall thereupon order that said improvement shall be made and constructed in accordance with the plans and surveys accompanying the said application," as the court did not approve of the application of record, but approved of the application changed and materially altered by having the words of the application, "By one or other of the following routes" stricken out by running a pen through them, leaving the description of the application remain as for two separate and distinct routes joined at no point.

*R. F. Clever*, for appellant.—It has been held in O'Hara Township, 152 Pa. 319, that the objection that it was too late to file exceptions after final confirmation is without merit.

It is believed that the title of this Act of June 26, 1895, P. L. 336, providing for the permanent improvement of certain public roads or highways in the several counties of this commonwealth, etc., is defective in title, and repugnant to article 3, section 3, of the state constitution: Com. v. Severn, 164 Pa. 462; La Plume Borough v. Gardner, 148 Pa. 192.

A case very much in point is Phœnixville Borough Road, 109 Pa. 44. See also Quinn v. Cumberland Co., 162 Pa. 55.

It is believed that this act is also unconstitutional, being violative of article 3, section 7 of the constitution of Pennsylvania: Frost v. Cherry, 122 Pa. 417 ; Com. v. Denworth, 145 Pa. 172.

Again it is believed that this act is unconstitutional for the reason that in the body of the act it provides for the levying of taxes for the purpose on the whole county, yet designates the roads and highways within the limits of the townships, as the roads and highways to be permanently improved, excluding from that improvement roads or highways within the limits of boroughs and cities within the counties, this being violative of article 9, section 1 of the state constitution : Weeks v. Milwaukee, 10 Wis. 242 ; Ryerson v. Utley, 16 Mich. 269 ; Merrick v. Amherst, 94 Mass. 500 ; Martin v. Aston, 60 Cal. 63.

Again, the decree was also irregular and void, being not in compliance with the several sections of said Act of June 26, 1895, P. L. 336, secs. 1, 2, 8, 16, etc., the provisions of which contemplate a petition for a single road and a single proceeding throughout, because the description was of two separate and distinct roads not joined or connected at any point. This plainly appears on the record. The ruling in Road in Sadsbury Township, 147 Pa. 471, is applicable. If two roads could be taken in one proceeding, a half dozen might be taken in one proceeding. To take more than one road in a single proceeding is a substantial and fatal defect to the proceedings.

*N. S. Williams*, county solicitor, for appellee.—It is submitted on behalf of appellee that this court has not jurisdiction to review these proceedings for the reason that jurisdiction is not given either by the act of assembly under which these proceedings were instituted (1895, P. L. 336), or by the act of assembly creating and defining the jurisdiction of the Superior Court. See Act of June 24, 1895, P. L. 212, sec. 8, and the amendments to said Act of May 19, 1897, P. L. 67, and May 5, 1899, P. L. 248.

It is further submitted that the appellant, at least, is estopped from contesting these proceedings.

1. Because he failed to make any objections to the order of

the court of February 25, 1899, and the notice published in conformity therewith.

2. Appellant failed to file any exceptions to the order of confirmation nisi of March 7, 1899, allowing exceptions to be filed within ten days.

3. Appellant did not move in the matter until September 16, 1899, when he sued out this writ of certiorari, more than five months after confirmation absolute.

4. Appellant executed and delivered a release under seal to the county before these proceedings were instituted.

One who acts under an unconstitutional law and by his conduct induces another party to expend money on the faith of it, is estopped from subsequently setting up its invalidity: Bidwell v. Pittsburg, 85 Pa. 412. See also McKnight v. Pittsburg, 91 Pa. 273, Dewhurst v. Allegheny, 95 Pa. 437, Beaumont v. Wilkes-Barre, 142 Pa. 198, Harrisburg v. Baptist, 156 Pa. 526, and Broad Street Church's Appeal, 165 Pa. 475.

There are not two roads in this case but one, the Middletown; the road divides; one portion is known as the Pine Hollow and the other as the Upper Road or Route. The other exceptions are mere technicalities and without merit.

OPINION BY RICE, P. J., October 8, 1900 (after finding the facts as set out in the statement of facts):

The questions raised on the argument will be considered under the following general heads: first, the constitutionality of the act of 1895; second, the sufficiency of the petition to give the court of quarter sessions jurisdiction to make the order or decree prayed for, and the regularity of the proceedings; third, the jurisdiction of this court to review the proceedings; fourth, the right of an abutting landowner to appeal from the order or decree, and the effect upon that right of his failure to file exceptions in the court below; fifth, the question of estoppel arising upon facts, outside the record, to which we shall refer.

1. The constitutionality of the act is assailed on the grounds, first, that the title is defective; second, that it violates the provisions of section 7, article 3 of the constitution which declare that the general assembly shall not pass any local or special law "regulating the affairs of counties, cities, townships, wards,

boroughs or school districts," or "authorizing the laying out, opening, altering or maintaining roads, highways, streets or alleys;" third, that it violates the provision of section 1, article 9 of the constitution, which declares that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

The act is entitled, "An act providing for the permanent improvement of certain public roads or highways in the several counties of this commonwealth, making such improved roads and highways county roads, authorizing the relocation, opening, straightening, widening, extension and alteration of the same, and the vacation of so much of any road as may thereby become unnecessary; authorizing the taking of property for such improvement, and providing for the compensation therefor, and the damages resulting from such taking; providing for the payment of the costs and expenses incurred in making such improvements, and in thereafter repairing and maintaining said road, and authorizing the levy of a tax to provide a fund for said purposes." The provisions of the act all relate, and are cognate, to one general subject, namely, the establishment and maintenance of certain highways as county roads, and that subject is clearly expressed in the title. It has been declared repeatedly that it is not necessary that the title should be a complete digest of the contents of the act; it is sufficient if it fairly and clearly gives notice of the subject-matter, so as reasonably to lead to an inquiry into the body of the act. In a very recent case the Supreme Court stated the rule as follows: "Where a general title, sufficient to cover all the provisions of an act, is followed by specifications of the particular branches of the subject with which it proposes to deal, the scope of the act is not limited nor the validity of the title impaired except as to such portions of the general subject as legislators and others would naturally and reasonably be led by the qualifying words to suppose would not be affected by the act. This is the rule established by all our cases. It is an application of the maxim expressio unius exclusio alterius. The express enumeration of the specific subjects must be affirmatively misleading as to the intent to exclude others, or the title will not be made invalid by it:" Sugar Notch Borough, 192 Pa. 349. This rule has

been applied or recognized by this court in recent cases : Baker
v. Warren, 11 Pa. Superior Ct. 170 ; Overseers v. Armstrong,
11 Pa. Superior Ct. 175 ; Read v. Clearfield, 12 Pa. Superior
Ct. 419. It is unnecessary to cite earlier cases. The rule is
firmly established, and in this case is not difficult of application.
No legislator or other person reading the comprehensive title
of this act would naturally and reasonably be led to suppose
that a law prescribing a mode whereby what is ordinarily known
and spoken of as a township road may be made a county road,
would not affect the powers and duties of townships and their
officers with reference to the establishment, maintenance and
control of such road. On the contrary he would naturally and
reasonably infer that something more was in contemplation in
making such improved highways " county roads " than a mere
change of name, and that duties would be imposed and powers
conferred on the county with reference to them. The title
plainly invited inquiry into the body of the bill as to the nature
and extent of those powers and duties, and this, under the au-
thorities, is all that was required. We cannot see that the title
is open to criticism ; it certainly is not in the particular speci-
fied by the appellant.

It is argued that the act is effective in any county only upon
the contingency of the county commissioners deeming it expe-
dient to adopt its provisions ; therefore, by the application of
the principles enunciated in Frost v. Cherry, 122 Pa. 417, and
Commonwealth v. Denworth, 145 Pa. 172, it must be declared
to be a local or special law. We do not think the act is paral-
lel with the acts construed in those cases. Its vitality as a law
does not in a true sense depend upon the exercise of an option
by the county commissioners. It is in force in every county
of the commonwealth, just as the law authorizing boroughs to
pave streets, to lay sewers and to make other improvements is
in force in every borough of the commonwealth, although the
corporate officers of some boroughs may in the exercise of their
discretion decline to avail the borough of its privileges, or may
pave some streets and leave others unpaved. The law provid-
ing for the taking of toll bridges for public use and making
the same county bridges is not self-executing. Unless the per-
sons designated in the act institute the proceedings, whereby
the expediency of making a particular bridge a county bridge

is to be determined, the law will not of its own force make it a county bridge. The result is that in some counties all toll bridges are "freed," in others none are, and in still others some are made county bridges and others are not. But surely it cannot be contended that it is a local or special law because its provisions do not of their own force make all toll bridges in the state, or all toll bridges in a county, county bridges. In-numerable other illustrations might be given to show the distinction between an act which is not to go into effect in a county until its provisions have been accepted by the county commissioners, and an act which provides that the proceedings for accomplishing its objects in particular cases shall be instituted by them. To hold that the act is special because the establishment of a county road requires the approval of the county commissioners, the grand jury and the court of the county, and, perchance, as particular cases arise they may not give their approval, would be to declare a principle which would invalidate numberless laws on the statute books concerning the constitutionality of which no question has ever been raised. It would be in conflict with the ruling in Lehigh Valley Coal Co.'s Appeal, 164 Pa. 44, and would put a construction on this provision of the constitution which is not warranted by any decision that has come to our notice. The act was passed for a wise purpose. Faithfully and judiciously administered it will result in better roads, and an equitable and just distribution of the burdens of maintaining the more important public highways of the commonwealth. But whether a wise law or not, the courts have no right to declare it invalid unless it clearly violates some constitutional provision. Where none of the reserved rights of the people of the commonwealth are involved "to doubt is to be resolved in favor of the constitutionality of the act." As was said of the act under consideration in the last cited case, so it may be said of this act: "The subject of the act—improvement of roads—is one that has been, of late years, a matter of agitation and discussion among the people. The general assembly, doubtless prompted by public opinion, embodied a public suggestion into a law of the commonwealth. We ought not to strike down a law thus enacted, unless it be palpably in conflict with the constitution." The objection that this is a special law is not sustained.

The further objection that the act violates the constitutional provision as to uniformity of taxation is still more untenable. It is not true that the improvement of the highways contemplated by the act is in its nature local to the township or other municipal division of the county in which the particular road to be improved is located. All the people of the county derive benefit from the improvement, of the same kind and in equal degree as from the erection of county bridges. No constitutional provision is violated in imposing the burden of making and maintaining such improvements upon the people of the whole county. The argument against the law is based on the proposition that it is an attempt to impose a township burden upon the county. The error is in assuming that it is in its nature a burden which the township or other municipal division of the county ought to bear, whereas the truth is that whether the burden shall be imposed upon them or upon the county at large is purely a matter of legislative policy.

2. None of the constitutional objections urged against the act being sustained, we come next to the question as to the sufficiency of the petition, and the jurisdiction of the court to make the order prayed for. The first section of the act provides that any county shall have the power, " to cause any particular main or public road or highway or section thereof in such county to be improved under the provisions of this act," (the language just quoted is to be particularly noticed), whenever the commissioners or a majority of them shall, by resolution duly adopted, deem it expedient to do so, and their proposition is duly approved by a grand jury and by the court of quarter sessions. At the foundation of the proceedings there must be a resolution of the commissioners designating a "particular" road or section thereof. We do not say that it is absolutely essential that a literal copy of the resolution must be set forth in, or attached to, the petition, although we remark that to do so would be good practice. But aside from all question of form, if neither the petition nor the resolution therein referred to designates with reasonable certainty the "particular" road or section thereof that is to be made a county road and improved, it is too plain for argument that the court cannot take jurisdiction. The question presented in this case is, not whether the commissioners may designate two roads in a single resolution

and petition and obtain a decree for the improvement of both of them (a point upon which we express no opinion), but whether they may obtain authority to improve either one of two or more roads designated in their resolution and petition, the selection of the "particular" one to be improved being left to their sole discretion subsequently to be exercised. The answer to that question is equally as plain as the first proposition; indeed it is necessarily involved in it. The act plainly requires that when the final decree shall be made the record shall show what particular road has been made a county road and is to be improved. Where the grand jury and the court simply approve such an application as this, the record fails to show which of the two or more roads designated in the petition is made a county road. Moreover, by thus leaving the selection of the particular road to the sole discretion of the county commissioners, the court and grand jury surrender part of the discretion which the legislature manifestly intended should be exercised by them. They are required by the act to pass on the expediency of improving a particular road or section thereof, not on the expediency of permitting the county commissioners to select one out of two or more designated roads for improvement. We can find no warrant in the act for a decree which leaves the particular road to be improved to be determined afterwards by the county commissioners.

3. It is suggested that jurisdiction to review these proceedings has not been given to this court, either by the act under which the proceedings were instituted or by the act creating and defining the jurisdiction of the Superior Court. Sections five to ten inclusive of the former act relate to the proceedings to fix the damages when the amount of the same cannot be agreed upon. They may be instituted by the county commissioners or any person interested in the proposed improvement and whose property or land is affected thereby. The proceedings for the ascertainment of the damages are entirely in the common pleas, and need not precede the actual making of the improvement. The tenth section provides, inter alia, that "any party so interested may, within thirty days after final decree and confirmation of said report by said court, have an appeal to the Supreme Court." It is thus seen that the act contemplates two distinct proceedings in different courts. One begins in the

quarter sessions and ends in a final decree of that court "that said improvement shall be made and constructed in accordance with the plans and surveys accompanying the said application." The other begins and ends in the common pleas. When it is said in the decisions that appeals should not be resorted to when the effect is to bring cases into the appellate court by instalments, reference is had to cases where upon a single appeal the entire proceedings will be brought up for review. This is not such a case. An appeal from the decree of the common pleas would not bring up the record of the proceedings in the quarter sessions. The fact that the act gives a party aggrieved by the decree of the former court a right to appeal from that decree to the Supreme Court does not, in our opinion, warrant the conclusion that the legislature intended to debar him from bringing up the record of the proceedings in the quarter sessions for review. If we are correct in the foregoing conclusion our jurisdiction in the present case is clear. It is beyond all question, that, prior to the creation of the Superior Court, the Supreme Court was authorized to examine the proceedings of the court of quarter sessions in any matter specially committed to it by statute, so far as to inquire and determine the extent and limits of its power, and the regularity of its exercise. The proper mode of asserting this jurisdiction was by bringing up the record of its proceedings for inspection by writ of certiorari ; the general rule being that when a new jurisdiction is created by statute and the court or judge exercising it proceeds in a summary method, or in a new course different from the common law, a certiorari would lie : Appeal of Commissioners of Northampton, 57 Pa. 452 ; Diamond Street, 196 Pa. 254 ; Morrellville Borough, 7 Pa. Superior Ct. 532. This jurisdiction of the Supreme Court, so far as it concerned proceedings in the quarter sessions, was transferred to the Superior Court by the Act of June 24, 1895, P. L. 212, sec. 7, clause a. It extends to proceedings authorized by subsequent legislation as well as to those authorized by prior legislation, and although by the Act of May 9, 1889, P. L. 158, the revisory proceeding is called an appeal, the jurisdiction to be exercised is precisely the same as that which the Supreme Court had on certiorari prior to that act. It is confined to an examination of the record proper for the purpose of determining whether the court below has kept

within the limits of the powers conferred upon it and has exercised them in conformity to law. This disposes of the question of our jurisdiction.

4. The next question is as to the effect of the appellant's failure to file exceptions in the court below. The general rule is that the court will not be reversed unless the errors complained of have been called to its attention. To this general rule there are well recognized exceptions. " When it is said that all irregularities and errors to which exceptions are not taken in the quarter sessions will be considered as waived, the court must be understood as excepting such as appear on the face of the record: " Frankstown Road, 26 Pa. 472. In that case the court reversed an order confirming a report of road viewers because it had not been made at the term to which the order was returnable, or to which it had been regularly continued, notwithstanding the fact that the plaintiff in error had not excepted in the court below. In Bean's Road, 35 Pa. 280, the defect in the proceedings assigned as error was that the termini of the proposed road were not defined with sufficient precision. Exceptions were filed in the court below but not being in conformity to its rules they were dismissed for that reason. On certiorari the court was reversed, not because it had dismissed the exceptions but because it was apparent on the face of the record that the court had no authority to order the road to be opened. Mr. Justice STRONG, who delivered the opinion of the Supreme Court, said: "It is true this exception was not taken in the court below according to the rules of that court. The exceptions filed not having been accompanied with a certificate of the attorney, that, in his opinion there were good legal reasons why the report should not be confirmed, they were liable to be dismissed on motion. They were dismissed, but the court went further, and confirmed the report of viewers. Doubtless, after the dismissal, the case was in the same condition as if no exceptions had been filed. Yet this did not authorize the court to confirm the report and order a road to be opened when there was nothing upon the record to show its locality. We do not, indeed, often notice exceptions not taken in the court below, but where there is a radical error patent on the face of the record, especially where the court has made a final order that cannot be executed, an order which in itself is erroneous, we will

correct the mistake." It is apparent from these remarks that the same judgment would have been entered by the Supreme Court even if no exceptions had been filed. Another case directly in point is O'Hara Township Road, 152 Pa. 319. There the defect in the proceedings was the same as that in Bean's Road. No exceptions were filed, but after final confirmation a motion was made to strike off the same. On appeal the decree of confirmation was reversed and all the proceedings set aside. Mr. Justice GREEN, speaking for the Supreme Court, said: "The objection that it was too late to file exceptions after final confirmation is without merit. These exceptions are to matters appearing on the face of the record, and as they are fatal to a decree of confirmation, error may be assigned in this court, although no exceptions were filed in the court below. . . . We think the learned court below should have permitted them to be filed nunc pro tunc, but the refusal to do so does not deprive the appellants of their right to assign error in the decree, in this court, because the record itself sustains the exceptions, and they are fatal to a decree of confirmation." See also In re Milford, 4 Pa. 303, Borough of Little Meadows, 28 Pa. 256, and In re Dunbar Township, 12 Pa. Superior Ct. 491. The defect complained of in the present case is not one of form only but of substance. It is a jurisdictional defect. Being apparent on the face of the record, the fact that one interested in, and affected by, the invalid order, as the appellant is, did not except in the court below, does not preclude him from appealing and assigning the matter for error.

5. It is contended further that the appellant is estopped. The facts upon which this alleged estoppel is based do not appear of record, and strictly need not be considered. We have, however, given them full consideration, and are convinced that they would not be sufficient to warrant the conclusion that the appellant is estopped from questioning this decree, even if they were properly before us. What are they? First, the appellant with others petitioned the county commissioners to cause to be improved " the public road known as the Middletown road," describing it; second, he signed a release " of and from all claims for damages . . . . if the permanent improvement of said road as a county road be confirmed by the court of said county." This petition and release were signed before the institution of

the proceedings, and relate to the road which has been spoken of as the Upper Route. It is apparent, therefore, that the appellant has done nothing to warrant the county commissioners in supposing, and acting on that supposition, that he would not oppose an alternative application such as this was. The commissioners claim the right under the decree to improve the Pine Hollow road or route. The appellant owns land abutting on it, and claims that by reason of bridge abutments, fills and encroachments, he will be injured. The question as to the extent of his injury is not before us. It is sufficient to show that he is interested in, and will be affected by, the proposed improvement, and, therefore, had a standing to raise the question as to the validity of the proceedings. See Road Commissioners v. Fickinger, 51 Pa. 48. We do not commend his action in not filing exceptions before final confirmation, but we cannot say that he thereby forfeited his right to raise on this appeal the substantial and jurisdictional questions we have discussed.

The decree is reversed and the proceedings are set aside.