C.

# Incorporation of Duquesne Borough.  Oliver's Appeal.

*Incorporation of boroughs—Manufacturing plants—Act of April 3, 1851.*

In the incorporation of a borough, under the Act of April 3, 1851, P. L.
320, tracts of 44, 28 and 26 acres on which are located plants of manufac-
turing corporations, situated between the residence portion of the village
and a river, and entirely cut off by the former from the township to which
they belonged, are properly included within the corporate limits.

*Exclusion of farm lands—Act of April 1, 1863.*

Under the Act of April 1, 1863, P. L. 200, authorizing the exclusion
from the limits of a proposed borough of lands, used solely for farming
" and not properly belonging to the town or village," it must appear, in
order that land so used may be excluded, that it does not properly belong
to and constitute a part of the village or town.

*Description of boundaries—Rivers—Act of April 1, 1834.*

When a navigable river is one of the boundaries of a proposed borough,
a description of the line along the river as extending " thence by low
water line, and down said river. . . . feet," is a sufficient compliance
with § 2, Act of April 1, 1834, P. L. 163, requiring that the petition ex-
hibit '' the courses and distances in words at length.'' '

Argued Nov. 6, 1891.  Appeal, No. 300, Oct. T., 1891, by
Mary Oliver et al., from an order of Q. S. Allegheny Co., Sept.
T., 1890, No. 8, incorporating the borough of Duquesne.  Be-

fore Paxson, C. J., Sterrett, Green, Clark,* Williams and McCollum, JJ.

The nature of this case and the material facts thereof are stated in the opinion of the court below, by Slagle, J., as follows:

On September 13, 1890, a petition of numerous citizens was presented, asking for the incorporation of the borough of Duquesne, which was referred to the grand jury as required by law. Remonstrances were filed, which were also referred to the grand jury. On October 2, 1890, the grand jury found that the conditions prescribed by the acts of assembly had been complied with, and that " they believe that it is expedient to grant the prayer of the petitioners." To this finding exceptions were filed by the Allegheny Bessemer Steel Co. and the Howard Plate Glass Company. Petitions were also filed by H. C. Bughman, trustee of the estate of James H. Hays, V. K. McElheny, et al., Mary Oliver, and Robert Patterson, for exclusion of certain alleged agricultural lands owned by them respectively. A commissioner was appointed to take testimony and afterwards the same was argued by counsel.

Without following the order or language of the exceptions, the substance, as gathered from them and the arguments of counsel, is as follows:

1. That notice of the application was not published as required by law.

2. The certificate of the grand jury is defective, not having been signed by a majority of the grand jury.

3. That the petition and plot attached does not set forth the courses and distances in words at length.

4. The court has no jurisdiction to incorporate as a borough, lands of the character included within the limits proposed. (a) It includes large manufacturing sites. (b) It includes a large amount of agricultural lands. (c) It includes two villages.

1. Upon the argument no mention was made of a defect in

---

· * This was the last day Mr. Justice Clark occupied his seat on the Bench. The last opinion prepared by him, McCrea v. School Dist., 145 Pa. 550, was handed down with others of his opinions on November 9th, when he was not present. He died on November 20th. See proceedings in Memoriam, 144 Pa. xxi.

the notice.* Proof of notice was filed with the petition. No evidence was offered to contradict it. The notice as published appears sufficient, and is fully as accurate as that held to be sufficient in Edgewood Bor., 130 Pa. 348.

2. The third section of the Act of April 1, 1834, does not require the signatures of the grand jury. The certificate was signed by the foreman in the same way that indictments are returned. This ought to be sufficient.

3. The petition sets forth the courses and distances in words at length, except upon the river line, which is described "by low-water line." It is contended that the measurements should have been made upon the ground, and the courses and distances inserted. This, in ordinary cases, would be impossible, as in many streams the courses would not be the same at time of decree, that they were when application was made; and where a municipal corporation bounds upon a river, which is a natural boundary, it should not be excluded from its river front by the natural changes in the banks. This being upon slackwater, the changes are not likely to be material, but the fact that they might be shows that a description by the natural boundary is all that could be reasonably required.

The act does not require the plot to contain courses and distances in words. This would be impracticable unless the plots were made very large and cumbersome, and would be useless when the petition contains the same matter.

The proposed borough of Duquesne is situated on the Monongahela river about ten miles above Pittsburgh, and nearly opposite the city of McKeesport, with which it will soon be connected by two bridges, one for a railroad, the other for ordinary travel. There was for many years a small mining village at the lower part of the present village or town, which was known as Germantown. About the year 1885 or 1886, the Duquesne tube works, the Allegheny Bessemer steel works, and the Howard plate-glass works were established. Population rapidly increased, and is now more than four thousand. There is now but one village known as Duquesne. The Pitts-

---

* The notice published was as follows:

PUBLIC NOTICE.

Notice is hereby given that on Saturday, September 13, 1890, or as soon thereafter as convenient, an application will be made to the court of quar-

burgh, Virginia & Charleston railroad runs through the village. The three manufacturing sites extend from the railroad to the river.   The Duquesne tube works have over twenty-eight acres, the Bessemer works over forty-four acres, and the plate-glass works over twenty-six acres.   Between the Duquesne tube works and the Bessemer steel works is a piece of ground owned by Mrs. Oliver, claimed to be farm land and a part of Oliver tract, which is laid out as town lots extending to the river.   Between the Bessemer steel works and the plate-glass works is a tract owned by Robert Patterson, containing about fifty-five acres, claimed to be farm land, and above the glass works a piece of land owned by McElheny, which was partly laid out in lots, but has been taken by the railroad company for depots and sidings, and a portion will be used as an approach to the bridge.

It is contended that these manufactories should not be included within the borough corporation, because the property cannot be used for ordinary building sites or town lots, and do not need municipal control, having their own police and fire protection, their own system of drainage, having no use for schools, and the streets could not be made through it without detriment to the present uses.   The exceptants therefore say that the court has no power to incorporate a borough including such property, and if it have, they should not be subjected to the burden of corporate government.

It is not disputed that the community collected around the manufactories (in fact brought there by them), should be incorporated.   Without it, there can be no regulation or improvement of the streets, no adequate police or fire protection, no proper provisions for the general health.   But, exceptants say that, as the town is located above the railroad, it could be organized without extending beyond it.   This is true, but the town would then be limited to the railroad and ordinary roads for its outlet, and it would be excluded from the use such a

ter sessions of Allegheny county, by a majority of the freeholders, who are inhabitants of the village of Duquesne, county of Allegheny, for a charter incorporating said village as a borough.

R. C. RANKIN,
Solicitor for Applicants.

community has for a river. It should have access to the river for the commerce of the town and for drainage purposes.

But the contention of the exceptants is based on a narrow view of the situation. Wherever they may go they must be subject to governmental control of some sort. It is impracticable to establish a separate governmental organization for each manufactory, however large; therefore, if it is not in a city or a borough, it must be in a township, and the control differs in amount only, not in degree. It should therefore be attached to that political division to which it is physically connected. The whole of the district included within the proposed borough, is now part of Mifflin township. If the plan suggested by exceptants were adopted, the position occupied by these manufactories would be cut off from the balance of the township, which could not be reached except by passing through the borough limits or excluding a portion of the territory already laid off in lots and already a part of the community needing a borough government. They would then be subjected to taxation for the maintenance of roads which they could not reach except by passing over the streets of the borough, and for schools which they could not use. This would be more apparently unjust than to impose taxation for municipal purposes in a town in which they have an interest, though they are disposed to ignore it.

The fact that they maintain a police and fire department and have constructed some [?] at their own expense, show that they are necessary. These are proper purposes of municipal control and can be better performed by public than by private power; the police at least, requires public authority for efficient service, and cannot safely be left in private control. The schools may be maintained by the township as well as by the borough, but no better and no more economically. But the question is not to be decided by the private interest even of business corporations. As to schools, it has never been supposed that a party should not be taxed for their support because he has no children to be educated. They are maintained for the public good. So, of the other objects of municipal government. These manufacturers have an interest, notwithstanding the most of them can be secured at their own expense. The community is largely composed of their em-

ployees. It is the interest of employers to have them. near their works, and further that they should have comfortable homes and surroundings, calculated to insure peace, good order and health. If a municipal government will conduce to this, it should be created. There is, therefore, no reason why these manufacturing properties should not be included in the borough.

As to the objection that there is a large quantity of agricultural land included within the borough, we may say that it would be good ground for refusing to grant a charter, if it could not be excluded without seriously affecting that part which may be properly incorporated. We think this is not the case in this instance.

The fact that there are two villages included within the limits of the proposed borough is not specifically assigned in the exceptions, but was suggested in argument. We do not find this to be the fact. Whether or not there ever were two distinct villages does not appear, but if there were, they are now one. In the case of West Philadelphia Bor., 5 W. & S. 281, Judge GIBSON said: " The acts of assembly give no authority to roll two villages into one, much less to work up with the mass a tract of country which is no village at all." But he was speaking of a condition existing when the application was made. If two villages have in fact become one, though formerly or even now having two names, there would seem to be no reason why the community should not be incorporated as one. Villages have no defined boundaries; and when by natural growth they unite, they become one by whatever name they may be known.

This disposes of the exceptions which affect the entire proceeding.

This application for the exclusion of certain properties is made under the Act of 1863, which gives to the court power to change the boundaries so as to exclude therefrom lands used exclusively for the purposes of farming and not properly belonging to the town or village. It is apparent that it was not intended to exclude from a borough all lands used for farming purposes. This would be impracticable, as no borough could be limited to lots upon which houses had been previously built. It may include a " convenient curtilage : " West Phil-

adelphia Bor., 5 W. & S. 284. The fact that lands are used
for farming purposes, is therefore not the only matter to be
considered. Such use might be made of lands in the heart of
the city. · The question is, are they properly a part of the com-
munity seeking to be incorporated?

The lands of the Hays estate are part of a large tract used
as a farm. They are some distance from the built-up portions
of the town. Counsel for petitioners do not seriously object
to their exclusion, and an order will be made accordingly.

The testimony indicates that the land marked McElheny
No. 1, is of the same character and should be excluded. The
same reasons do not apply to the land marked McElheny
No. 2. The proposed bridge approach is upon it, and it should
be within the borough control.

The Mrs. Mary Oliver land adjoins a plan of lots laid out
upon a portion of the same estate. A number of houses have
been built upon it, upon continuation of streets in the village.
Some lots have been leased and occupied by tenants. This
seems to be a proper "curtilage" to the village.

The Patterson land is part of a large tract. That above the
railroad has been laid out in lots; the portion below the rail-
road is apparently held for a manufacturing site. The evi-
dence shows that it is worth four thousand dollars to five
thousand dollars per acre and though it has been cultivated it
is not properly agricultural lands. Besides, it is surrounded
on all sides except the river by lands which we have held pro-
perly included within the borough limits. It could not be
properly excluded.

The exceptions of the Allegheny Bessemer Steel Co. and
the Howard Plate Glass Co. are dismissed. A decree may be
drawn incorporating the borough of Duquesne, excluding the
lands of the Hays estate and McElheny No. 1.

—On September 12, 1891, the court entered a decree incor-
porating the borough of Duquesne, after excluding the Hays
lands and the McElheny tract No. 1.*

---

* The whole area included in the lines specified in the petition was
eight hundred and thirty-one acres. The lands excluded by the court
contained one hundred and twenty acres (Hays eighty acres, and Mc-
Elheny forty acres), leaving the area of the borough as incorporated
seven hundred and eleven acres, of which the appellants owned together

1892.]     Opinion of Court below—Opinion of the Court.

Mary Oliver, Robert Patterson, the Allegheny Bessemer Steel Co. and the Howard Plate Glass Co. appealed.

*Errors assigned* were (1) the action of the court in entering the decree incorporating the borough of Duquesne; (2) in assuming jurisdiction to incorporate more than a town or village; (3) in assuming jurisdiction to incorporate a town or village and the surrounding tracts of lands which are not village land; (4) in assuming jurisdiction to incorporate with a town or village, large tracts of surrounding land which are used for farming purposes; (5) in assuming jurisdiction to incorporate with a town or village, large tracts of land adjoining the village, which are used exclusively for manufacturing purposes and have only mill buildings and structures upon them; (6) in assuming jurisdiction to incorporate a town or village, where no petition is presented in writing, setting forth a particular description of the proposed borough and exhibiting the courses and distances in words at length.

*Charles B. Payne*, with him *Charles M. Thorp*, for the appellants, cited: West Philadelphia Bor., 5 W. & S. 281; Little Meadows Bor., 35 Pa. 335; Edgewood Bor., 130 Pa. 348; Blooming Valley Bor., 56 Pa. 66.

*W. B. Rodgers*, with him *R. C. Rankin*, for the appellees.

OPINION BY MR. JUSTICE STERRETT, January 4, 1892.

It is very evident from the clear and concise statement of facts in the opinion of the court below that the inhabitants of Duquesne village, numbering about four thousand and rapidly increasing, are greatly in need of a municipal government such as incorporation into a borough will afford them. It is also apparent from an examination of the record that there is no error, either in the decree of incorporation or in the proceedings leading thereto.

Two of the appellants, the Allegheny Bessemer Steel Co. and the Howard Plate Glass Co., severally own large pieces of land within the limits of the proposed borough, on which their respective plants are located; and each of them employs a

---

two hundred and twenty-four acres, the land of Mary Oliver containing ninety-seven acres, and the respective quantities of land owned by the other appellants being as stated in the opinion of the court below, supra.

large number of men, many of whom reside within same limits. The village is mainly the outgrowth of these and other manufacturing establishments therein. Between the proprietors of these establishments and the people of the village, there is a community of interest that calls for the establishment and maintenance of a local government adapted to their common necessities. The plants of these two appellants constitute a very important part of the village, and there appears to be no good reason why their property should be excluded from the borough limits, and thus be relieved from contributing to the support of a much-needed local government. The natural boundaries of the proposed borough embrace the lands in question. They are so located on the river front that they cannot be excluded without carving each of them out in such a way as to separate them entirely from the township to which they belong, and leave them without means of ingress and egress by land, except over the streets of the borough. Another result of their exclusion would be to deprive the borough of access to a large portion of the river front, much needed for purposes of commerce, drainage, etc.

The objection that the courses and distances of the boundary line along the river are not given "in words at length" is without merit. After commencing "at low-water line on the Monongahela river, at the dividing line of lands of the Duquesne tube works and the Hays estate," each of the several courses and distances on the landward side are accurately given. The last of these is: "South, fourteen degrees twenty-three minutes west, six hundred and seventy feet, to low-water mark" on said river. Then the natural river boundary line, than which there can be none better, is given thus: "And thence by low-water line, and down said river, ten thousand two hundred and thirty-one feet, to the place of beginning." This description so fastens the river front of the borough to low-water line that no question can ever arise as to its boundary on the river; and that is just as it should be.

What has been said is also applicable, in the main, to the other appellants, Mrs. Oliver and Mr. Patterson. They seek, however, to have their respective lands excluded from the boundaries of the proposed borough under the Act of April 1, 1863, P. L. 200, which provides that whenever the boundaries

fixed by petitioners for a borough "shall embrace lands exclusively used for the purpose of farming, and not properly belonging to the town or village," the court shall have power to so change the boundaries as to exclude such lands. It is not enough that the lands sought to be excluded should be used exclusively for the purpose of farming; it must also appear that they do not properly belong to and constitute a part of the village. Both these conditions must concur, not only because the act so provides, but also for the obvious reason that lands within borough as well as city limits are often used for agricultural purposes exclusively, until they are in demand for building purposes, and sometimes long afterwards. While it appears that the lands in question, so far as they are utilized for any purpose, are used as farming lands, it does not appear that they do not properly belong to the village of Duquesne. On the contrary, the court, in view of the market value of the lands, and their immediate proximity to the closely built-up portions of the town, etc., properly concluded otherwise. These and other questions involved in the specifications of error have been so fully considered and satisfactorily disposed of in the opinion of the court below that further elaboration is unnecessary.

Decree affirmed, and appeal dismissed at the costs of appellants.                                                     C.