171     211
25 SC ³625

# Incorporation of The Borough of Narberth.   Appeal of J. Pemberton Ellis and Others.

*Borough—Incorporation—Depositions—Record—Appeal.*

The general expediency of incorporation shown by depositions for and against the same, but not brought up with the record, is not a proper subject for consideration on appeal to the Supreme Court.

*Boroughs — Incorporation — Grand jury—Acts of April 1, 1834, and April 1, 1863.*

Under the acts of April 1, 1834, P. L. 163, and April 1, 1863, P. L. 63, it is the province of the grand jury, subject to the revisional authority and discretionary power of the court of quarter sessions as to the exclusion of farm lands, to determine all questions of fact and expediency that are necessary to a valid decree of incorporation of a borough.

*Boroughs—Incorporation—Review of decree by Supreme Court—Practice, S. C.*

The Supreme Court will not disturb a decree incorporating a borough, unless illegality in the proceedings is made manifest by the record, or abuse of discretion on the part of the court below is distinctly charged and clearly established.

The Supreme Court will not reverse a decree incorporating a borough because on every side of the borough, except one, the whole width of bounding roads was included within the borough, while the remaining side bounded by a turnpike did not include the turnpike road.

Argued April 19, 1895.   Appeal, No. 344, Jan. T., 1895, by J. Pemberton Ellis et al., from decree of Q. S. Montgomery Co., No. 128, Boroughs etc. records, incorporating the borough of Narberth.   Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM and MITCHELL, JJ.   Affirmed.

Petition for the incorporation of Narberth borough.

The grand jury reported in favor of incorporation.

The following exceptions were filed by appellants to the report of the grand jury.

1. Because within the boundaries of the proposed borough of Narberth are included many large tracts of land, on some of which some of your exceptants live, which are comprised in the two classes of farm land (including pasture land) and wood land, entirely without improvements except the few necessary farm houses, barns and buildings, none of which lands are rea-

sonably appurtenant to said village proper, and none of which should be included within the limits of the proposed borough from the fact of being non-appurtenant farm land and wood land, and the inclusion of which would be unfair, disadvantageous and very costly and expensive without benefit in return.

2. Because the limits of the proposed borough of Narberth are unnecessarily large and include the land of your exceptants, said limits being unduly extended south and east and west of the village proper.

3. Because the inclusion of the land of your exceptants in said proposed borough would be unduly burdensome to the land and to its owners by reason of the greatly increased taxation which would result therefrom for the payment of necessary municipal salaries and expenses—a greater portion of which expenses would probably have to be borne by farm property than by actual village property—although this land so burdened by taxation would reap not the slightest benefit therefrom.

4. Because the inclusion of the land of your exceptants in said proposed borough would be unduly burdensome to the land and its owners by reason of the bonded debt which remonstrants understand and believe the promoters of the incorporation of the borough of Narberth propose to incur for the purpose of macadamizing the streets and introducing a sewage and drainage system in that part of the village of Narberth lying immediately north of the Pennsylvania railroad, which improvements would inure only to the benefit of that part of said village and of the owners of lots therein not otherwise salable.

5. Because your exceptants believe that the proposed incorporation of the borough of Narberth is nothing but a specula tive movement in the interest of the owners of unsold lots and houses in that part of the village lying immediately north of the Pennsylvania railroad which cannot be made salable without municipal improvements, a great portion of the expense of which will have to be borne by the outlying farm land and country seats of your exceptants, which reap no benefit therefrom, but are included within the proposed borough limits simply for the purpose of increasing the aggregate of taxable property to swell the revenue from direct taxation, and to greatly enlarge the basis for bonded indebtedness.

6. Because the citizens of the territory proposed to be incorporated as the borough of Narberth are now enjoying—as citizens of the township of Lower Merion—the benefit and use of a large new stone school building, the finest and largest in the township of Lower Merion, erected by and belonging to the school district of Lower Merion, and standing upon ground within the limits of the proposed borough of Narberth.   In the event of the incorporation of Narberth this expensive school building (which cost fifteen thousand dollars) will have to be taken and paid for by said borough for the exclusive use of the public school scholars attending the said school and residing within the limits of said proposed borough, of whom there are less than twenty ; and the payment of the cost of this school building will necessitate the heavy bonding of your exceptants' and other property from the very start for the purpose of adjusting the indebtedness of Narberth to the school district of the township of Lower Merion on this account.

7. Because incorporation is not a necessary prerequisite to the acquisition of the advantages of municipal improvement which is urged as one of the chief reasons for incorporation, the present system of Suburban Village Association Government which now prevails within part of the limits of the proposed borough, and is available within the rest of the limits, being preferable and less costly than a borough government to people who are willing to pay out of their own pocket for the improvement to their own property instead of obtaining this improvement by taxing other people who are not improved nor benefited thereby.   As a matter of fact, that part of the village of Narberth lying south of the Pennsylvania railroad, is already fully equipped with a complete waterworks, Waring sewage system, splendid macadamized roads, good sidewalks, public electric lights, and, as the residents comprise citizens of the best class only, they have no occasion for municipal police nor boards of health, nor the other restrictions and burdens imposed by municipal government.

8. Because the owners of property along the northern line of the proposed borough of Narberth will be taxed for road improvements, etc., from which they cannot obtain the slightest benefit, as these properties front on a turnpike controlled by a private corporation, which is entirely outside of the pro-

posed borough and of control thereby. They will even have to pay toll to travel upon said Montgomery avenue, the only means of exit from and access to their premises, while also paying borough taxes on their real estate which is partly for road purposes, being thus doubly taxed without any benefit.

SWARTZ, P. J., filed the following opinion :

The exceptants allege that the proposed incorporation includes nonappurtenant farm land ; that the limits are unnecessarily large, extending south, east and west of the village proper ; that certain portions of the territory will be subjected to increased taxation without any corresponding benefit ; that the movement is in the interest of speculating lot owners ; that the expensive schoolhouse within the limits will necessitate the heavy bonding of exceptants' property ; that the improvements south of the railroad are in advance of those north of the railroad ; that the village south of the railroad will be unjustly taxed to improve the property on the north side.

It will be observed that the exceptions do not question the regularity of the proceedings, but attack the merits of the application for incorporation. The grand jurors met the witnesses face to face upon the questions now raised by the exceptants, and we should confirm their actions unless we can offer some substantial reason for withholding our approval. .

The reasons given by the petitioners satisfy us that they are in need of a municipal government, such .as an incorporation into a borough will afford them. Their streets need supervision ; the drainage needs attention ; and their nearness to a large city and the race tracks in the vicinity call for proper police protection. The majority of the citizens are anxious to improve their surroundings. Their voluntary association is no longer sufficient to meet their necessities. Nor is it just that these voluntary contributions should inure to the benefit of those who decline to contribute. Their complaint that the road taxes levied within the limits of the proposed borough are expended within the township without giving a corresponding benefit to the citizens of the village is fully made out and sustained.. Nor is it possible for the supervisors of the township to fully meet their wants. ·Supervisors do not direct the construction of sidewalks or attempt to fix a town system of street grades. Where a majority of the village is ready to make much

needed improvements to give themselves comfortable homes, the project should be encouraged. The township seems to recognize the justice of the petitioners' claims, for it does not appear as an exceptant to the proceedings.

We are aware that the proposed incorporation imposes to a certain extent a hardship upon some of the landowners south of the railroad. They do not need the street improvements required north of the railroad, because they have them already. But this applies only to about half of the property south of the railroad. Their grievance is that they will be taxed to improve the properties of their neighbors. This difficulty is not an unusual one. Few tax laws in their application work out exact justice and equality in all cases. But an improvement in the village necessarily to some extent inures to the benefit of all the property owners. Good streets are more valuable if the approaches to them are in like good condition. The inhabitants of a town have at times occasion to use other streets than those in the immediate vicinity of their houses. The objection now made could be used with equal force against the township. Why should these exceptants pay road taxes to the township when they are receiving no corresponding benefits? The supervisors spend no money upon the streets upon which their houses front. If their money, raised by taxation, is spent upon the streets of the town, are not their properties benefited as much as if it was paid into the township?

The sewage system and water plant are individual enterprises. The owners of these improvements do not lose their property by the incorporation.

The only land within the proposed limits used exclusively for farming purposes is the Thomas tract of sixty-one and one half acres. The Wood tract is to the east of this farm, but the greater portion is located on the south side of the railroad. The portion south of the railroad is in part divided into suitable lots for building purposes; one of the lots was sold, the others are in the market for sale. The southern portion of this tract adjoins the built-up parts of the village. The owners objected to the incorporation before the grand jury; but by a paper now on file they say, "We have not and do not care to file exceptions to the report of the grand jury." If we exclude the Thomas tract, we must necessarily exclude that part of the

Wood tract located east of the Thomas tract. The latter is exclusively used for the purpose of farming, and we cannot say that "it properly belongs to the town or village." There is much unimproved property within the proposed limits, many lots are for sale for building purposes, and the time is perhaps not near at hand when this farm will be required for the further extension of the town. The value of the land, it is true, is far beyond the price of farm land; but we are well aware that this can be said of all the land in the neighborhood, even for several miles around. No doubt it has a value of two thousand dollars per acre; but this value is not due to its proximity to the village. We must exclude this farm, as well as the Wood tract to the east of it and north of the railroad, and the Hunter tract north and east of the Thomas tract.

The last course of the proposed limits along Montgomery avenue should be south fifty-seven degrees east to east side of Merion road, thence by said east side of said Merion road to the northeast side of Narberth avenue, thence along said side of said avenue to the north boundary of the lands of the Pennsylvania railroad, thence along said railroad company's land to the east side of Rockledge avenue, thence by said side of said avenue and the several courses and distances returned by the grand jury to the place of beginning. The measurements and courses should be taken, so that a proper decree may be drawn fixing accurately the limits of the proposed borough. When these data are furnished we will approve the report of the grand jury modified as hereby indicated.

A motion was made for reargument, because due consideration had not been given to the eighth exception, whereupon the court filed the following supplementary opinion:

The difficulty suggested by the eighth exception was fully considered when we passed upon the objections urged against the corporation.

The owners of property along the line of the turnpike may prefer a change or modification of the boundaries that will exclude them from the borough, but we cannot see our way clear to make any such exclusion. Their lands are not used exclusively for farm purposes, nor can it be said that those lands "do not properly belong to the town or village." Perhaps it would

have been wise to include the bed of the turnpike road within the borough limits, but we cannot make the change at this time, certainly not without notice to the turnpike company and affording it a hearing.   We may alter the boundaries to exclude farm land, but we doubt our authority to make such alterations to meet objections based upon other grounds.   The fact that the turnpike is not within the borough limits, is not, in our judgment, such a mistake, if it be a mistake at all, as calls for the rejection of the finding of the grand jury.   For the reasons already given we are of opinion that the report of the grand jury as modified under our former opinion should be approved, and we will sign the decree submitted by counsel.

*Errors assigned* were (1–8) in overruling exceptions to findings of grand jury, quoting exceptions; (9) in incorporating the borough of Narberth; (10) in fixing the boundary of the proposed borough of Narberth along the northern line thereof, excluding the road of the Philadelphia, Bala and Bryn Mawr Turnpike Company; (11) in incorporating the borough of Narberth, and in including the whole of the roads comprising the boundaries thereof, except along the northern boundaries; (12) in incorporating the borough of Narberth, without including any of the roadway of the Philadelphia, Bala and Bryn Mawr Turnpike Company; (13) in incorporating the borough of Narberth without including to the middle line of every road constituting an outer boundary of the borough.

*Irving P. Wagner, Irvin P. Knipe* and *George S. Graham* with him, for appellants.—The incorporation of the borough of Narberth with its present limits was an abuse of judicial discretion; and under these circumstances the Supreme Court will revise the judgment of the court below and correct its error : Taylor Borough, 160 Pa. 475.

Where public highways form part of the whole of the boundaries of a proposed borough, the median line of said highways should be adopted as the actual line of division.

It was error to include the whole width of the boundary roads : Incorporation of Edgewood Borough, 130 Pa. 348.

It was error to include no part of the turnpike road : Borough of Little Meadows, 35 Pa. 335.

Lands outside a village must be reasonably appurtenant and

contiguous thereto, or reasonably necessary for its legitimate and not too long postponed growth, before they should be included within the limits of a projected borough: Borough of West Phila., 5 W. & S. 281; Blooming Valley Borough, 56 Pa. 66.

*Alex. Simpson, Jr., James B. Holland* with him, for appellees.

The discretion of the court below is not subject to review: Sewickley Borough, 36 Pa. 80; Darby v. Sharon Hill, 112 Pa. 71; Pottstown Borough, 117 Pa. 538; Lansford Borough, 141 Pa. 134; Quakertown Borough, 3 Grant, 203; Camp Hill Borough, 142 Pa. 511; Duquesne Borough, 147 Pa. 58; Osborne Borough, 101 Pa. 284.

The turnpike is not a township road, as was the case in the borough of Edgewood, 130 Pa. 348. Before the incorporation, as now, it was the property of the turnpike company, to be used only by those who pay tolls thereon; the complaint is substantially that the borough cannot improve that road for exceptants' benefit, and therefore they ought not to be included in the borough. If the argument is worth anything its reductio ad absurdum is that as, without the borough, the township could not improve that road, therefore appellants ought not to be in the township.

Their complaint also that, as it is, the borough cannot lay a sidewalk along the turnpike, is equally without pith, for if the turnpike was in the borough this court has said there would be an equal lack of authority: Borough of Milesburg v. Green, 22 W. N. C. 180.

OPINION BY MR. CHIEF JUSTICE STERRETT, October 7, 1895:

It is rightly conceded by the appellants that "the general inexpediency of incorporation"—alleged to have been shown by depositions taken for and against the same but not brought up with the record—is not a proper subject for consideration on this appeal. It is claimed, however, that the record proper presents such errors as justify the interposition of this court and require a reversal of the decree.

The first section of the act of April 1, 1834, P. L. 163, in connection with its supplements, empowers the several courts of quarter sessions, by and with the concurrence of the grand

jury of the county, to incorporate any town or village within their respective jurisdictions, and prescribes the mode of proceeding therein. The second section provides that the petition for such incorporation shall be in writing, signed by a majority of the freeholders residing within the limits of the proposed borough, setting forth its name, style and title, with a particular description of the boundaries thereof, exhibiting the courses and distances in words at length, and accompanied with a plot or draft of the same. The next section declares the court shall cause the application to be laid before the grand jury when in session, and if a majority of said jury, after a full investigation of the case, shall find that the conditions prescribed by the act have been complied with, and shall believe it is expedient to grant the prayer of the petitioners, they shall certify the same to the court and at the next term of court the judgment of the grand jury may be confirmed ; and if the decree of the court shall be in conformity with the prayer of the petitioners the decree shall be recorded, etc. But, if the court shall deem further investigation necessary, such order shall be taken thereon as to right and justice shall appertain.

The act of April 1, 1863, provides that if " the boundaries fixed by the petitioners shall embrace lands exclusively used for the purposes of farming and not properly belonging to the town or village," the proper court shall have power, at the request of the party aggrieved, " to change and modify such boundaries so as to exclude " such lands therefrom. In this case, the power thus conferred was invoked and was properly exercised by the court below.

It thus appears that the questions of compliance with the prescribed conditions, and the propriety of granting the prayer of the petitioners, etc., together with all questions of fact pertaining thereto or relating to the situation of the territory included within the limits of the proposed borough, etc., are committed to the arbitrament of the grand jury, who after a full investigation of the case are required to report their conclusions to the quarter sessions. That court in its revision of the judgment of the grand jury is clothed with large discretionary power. It is clearly the province of the grand jury,— subject to the revisional authority and discretionary power of the quarter sessions in the premises,—to determine all ques-

tions of fact and expediency that are necessary to a valid decree
of incorporation.   It was never intended that any decree incor-
porating a borough should be disturbed by this court, unless
illegality in the proceedings is made manifest by the record, or
abuse of discretion, on the part of the court below, is distinctly
charged and clearly established.   A careful examination of the
record, as presented to us, shows that all the requirements of
the act and its supplements were substantially if not strictly
complied with.   The application in due form was laid before
the grand jury.   They certified to the court that "after a full
investigation of the case," they found "the conditions pre-
scribed by the act of assembly . . . . and by other acts supple-
mentary thereto have all been complied with," and expressing
their belief that "it is expedient to grant the prayer of the peti-
tioners," they approved the application.   To this judgment of
the grand jury exceptions were filed, testimony was taken,
hearings were had, and upon due consideration of the whole
subject, the learned court passed upon the questions involved,
and, with the exception of so modifying the boundary of the
proposed borough as to exclude certain lands used solely for
farming purposes and not properly belonging to the village,
confirmed the judgment of the grand jury and entered the
decree from which this appeal was taken.

The first eight specifications of error are to the refusal of the
court below to sustain appellants' exceptions to the findings of
the grand jury, recited therein respectively.   The questions of
fact involved in these exceptions must have been considered by
the grand jury and determined by them in favor of the appel-
lees.   They were afterwards reviewed by the court and the
findings of the grand jury were confirmed.   As to all questions
of fact, necessarily involved therein, this confirmation was evi-
dently intended to be conclusive; and there is nothing in the
record to make this case an exception to the general rule.   If
the action of the court in dismissing the exceptions needs any
vindication, it will be found in the opinions sent up with the
record.   In his supplementary opinion, the learned president
of the quarter sessions, referring to the eighth exception, says:
"The owners of property along the line of the turnpike may
prefer a change or modification of the boundaries that will ex-
clude them from the borough but we cannot see our way clear to

make any such exclusion. Their lands are not used exclusively for farm purposes, nor can it be said that those lands 'do not properly belong to the town or village.' Perhaps it would have been wise to include the bed of the turnpike road within the borough limits, but we cannot make the change at this time, certainly not without notice to the turnpike company and affording it a hearing. We may alter the boundaries to exclude farm land, but we doubt our authority to make such alterations to meet objections based upon other grounds. The fact that the turnpike is not within the borough limits, is not in our judgment such a mistake, if it be a mistake at all, as calls for the rejection of the finding of the grand jury." In adopting the southerly line of the turnpike road as the northerly line of the borough there was no such error as would justify a reversal of the decree ; nor do we think there was any error in including within the lines of the borough the other highways by which it is bounded on the remaining sides. There is nothing in the record to indicate any error in the conclusions of fact reported by the grand jury ; nor does there appear to have been any abuse of the judicial discretion with which the court below is invested in such cases. Neither of the assignments of error is sustained.

Decree affirmed and appeal dismissed with costs to be paid by appellants ; and it is further ordered that the record be remitted for such further proceedings as may be necessary to carry the decree into effect :