## In re Borough of Fallsboro

*Willard S. Curtin*, for petitioners.

*Thomas A. Reap, Jr.*, for exceptants.

*I. Louis Rubin*, for Bristol Township.

SATTERTHWAITE, J., November 14, 1955. — This is a proceeding under subtitle (a) of article II of The

Borough Code, secs. 201 et seq., as amended, codified and revised by the Act of July 10, 1947, P. L. 1621, 53 PS §12251 et seq., for the incorporation of a new borough to be known as Fallsboro. Exceptions having been filed to the application, hearings thereon were held by the undersigned as trial judge who hereby makes the following

*Findings of Fact*

1. On October 25, 1954, an application was presented to this court for the incorporation as a new borough of certain territory within this county, being comprised of 17,000 acres in Falls Township, a township of the second class, 399 acres in Bristol Township, a township of the first class, and 6.45 acres in Lower Makefield Township, also a township of the second class.

2. Said application was physically composed of a series of 159 identical printed forms of petition, bound together in three bundles for convenience but presented and filed as one document. Each printed form was completely self-sustaining and contained an averment that petitioners thereon were freeholders of the territory proposed to be incorporated as a borough, a reference to the names of the respective townships involved, a full and complete surveyor's description by metes and bounds of the area to be incorporated and a suggestion of the name "The Borough of Fallsboro" therefor. After an appropriate prayer for incorporation, individual signatures of petitioners were subscribed on printed lines provided for the purpose, together with a notation of the respective date of each signature. Attached to each form of petition was a plot plan of the territory in question and an affidavit by the individual who had circulated that particular form, attesting that the facts set forth therein were true and correct, that he personally saw petitioners

affix their names thereto on the date set opposite their respective names and that all of the petitioners who had subscribed their names thereto were freeholders who resided within the limits of the proposed borough.

3. Upon the presentation of such application, the court directed that the same be filed and that notice thereof be given by publication in the Delaware Valley Advance-Morrisville Herald, a weekly newspaper of general circulation in the area affected, and in the Bucks County Law Reporter, the legal periodical designated by rules of this court, for four consecutive weeks starting October 28, 1954, which notice should set forth the fact of filing the aforesaid application and giving public notice that exceptions might be filed thereto by any person interested within 30 days from the date of application. Due proofs of publication in accordance with said order of court were subsequently produced and filed.

4. On November 24, 1954, two separate sets of exceptions were filed to the application, one on behalf of the Board of Commissioners of Bristol Township and an individual resident and taxpayer of that portion of Bristol Township proposed to be included in the incorporation; the other by a group of taxpayers and residents of Levittown, a portion of the territory of which would be included in the incorporation.

5. The aggregate number of signatures affixed to the aforesaid application was 6,982. The respective dates set opposite each of said signatures were all within a period of three months prior to October 25, 1954. Many, if not all, of the parties who subscribed to the affidavit on the individual printed form of petition mentioned in finding no. 2, supra, were petitioners themselves.

6. On October 25, 1954, the total number of freeholders of the area sought to be incorporated as a borough, whether resident or nonresident therein, was

10,789, composed of 10,769 freeholders of land in Falls Township, 19 freeholders of land in Bristol Township and one freeholder of land in Lower Makefield Township.

7. The description of the territory to be incorporated into the proposed borough includes all of Falls Township, except for one building development on a tract of approximately 100 acres known as Grandview Estates, which has since been annexed by ordinance to the contiguous Borough of Morrisville, the proceedings whereon have been duly filed and approved by decree of this court on July 29, 1955.

8. Of the 399 acres of land in Bristol Township sought to be included within the lines of the proposed borough, Danherst Corporation is the owner of 377. That corporation is the sole freeholder, as to lands in Bristol Township, which has joined in the within application. Apart from the individual exceptant mentioned in finding no. 4, supra, none of the other freeholders of the Bristol Township land involved became a party to these proceedings, although one other did appear at the hearing to testify in favor of the application.

9. The 1955 assessed valuation for tax purposes of all property located within the limits of the proposed borough aggregated $37,800,373, composed of $37,562,464, in the present Township of Falls, $233,-413 in the present Township of Bristol and $4,500 in the present Township of Lower Makefield.

10. The population of Falls Township in April of 1950, as disclosed by the United States Decennial Census, was 3,540. As of October 25, 1954, the estimated population of said township was approximately 22,000, the residents thereof living in roughly 7,500 homes. Extension acreage in the southern and eastern portions of the township is owned and held by United States Steel Corporation, as the site of its Fairless

Works plant, and by Warner Company, for sand and gravel and farming purposes. Both the latter corporations have joined in the within application.

11. Although the description of the territory to be incorporated into the proposed borough does include lands exclusively used for the purposes of farming or other large and unsettled lands, no party aggrieved thereby has requested the court to change the boundary thereof so as to exclude such lands therefrom.

12. A large housing development known as Levittown was commenced by the acquisition of a large amount of acreage by Levitt & Sons in 1951 and 1952, only part of which, however, is located within Falls Township and included within the territory proposed to be incorporated as a borough. Many thousands of individual homes have been constructed and sold on the entire holdings of Levitt & Sons, who were and still are developing the same as a coördinated whole, but without regard to preëxisting municipal lines.

13. Levittown, as already constructed, although having no corporate existence as such, is a distinct and separate "town" or community, located in part in four different existing municipalities: Tullytown Borough, Bristol Township, Falls Township and Middletown Township. Within the Falls Township portion, which is less than half the area of the whole, as of October 25, 1954, were located more than 4,000 homes, laid out on a series of interrelated plans of lots and streets which are integral parts of the whole homogenous development extending also into the three other municipalities mentioned.

14. Another large housing project, known as Fairless Hills, and consisting in October of 1954 of approximately 2,000 homes, lies generally to the north and northeast of Levittown and has heretofore been confined in actual construction to that portion of lands

of Danherst Corporation, the developer, within Falls Township. The developer proposes to extend its construction onto its adjacent 377 acre tract now in Bristol Township, being part of the 399 acres therein proposed to be included within the territory to be incorporated by these proceedings.

15. The boundaries of the territory to be incorporated as a borough are extremely irregular, following for the most part the present boundaries of Falls Township as they existed for many decades prior to the laying out and construction of Levittown and Fairless Hills:

(a) On the north, the boundary would extend along the comparatively straight and regular existing lines of Lower Makefield Township, adjusted, with the apparent concurrence of all concerned, so as to detach a small triangular tract therefrom to make an existing road, in part the boundary in the future.

(b) On the northeast, the boundary would follow the existing rather irregular lines of Morrisville Borough, as revised by the annexation of the Grandview Estates tract as mentioned in finding no. 7, supra.

(c) On the east and south, the boundary would follow the Delaware River.

(d) On the extreme southwest, the boundary would follow the existing irregular lines of Tullytown Borough in a northerly direction from the river into Levittown and thence through the latter generally in a westerly direction, still following the Tullytown Borough line which zigzags without present rhyme or reason through individual lots and possibly even houses in Levittown, to the Oxford Valley-Tullytown Road (Levittown Parkway).

(e) On the southerly part thereof, the westerly boundary would follow the existing boundary of Bris-

tol Township through the heart of Levittown and extend in part northerly along the Oxford Valley Tullytown Road (Levittown Parkway), then easterly, and again northerly by the arbitrary existing township line, departing from said road and indiscriminately crossing individual lots in Levittown, to the Newportville-Fallsington Road.

(f) On the northerly part thereof, the westerly boundary of the territory to be incorporated would depart from the existing line between the Townships of Falls and Bristol so as to include the aforementioned 399 acres presently within the latter. The present township line extends northerly and westerly across open land of Danherst Corporation without reference to any particular landmarks. The proposed boundary would follow the Newportville-Fallsington Road west to the Wistar (Chickenfoot) Road and thence northwesterly on the latter to rejoin the existing township line and thence also along the existing Middletown Township Line on the extreme west and so back to the Lower Makefield Township line first mentioned.

### Discussion

The proposed borough incorporation is opposed by three interests: One individual who is the owner of about 10 acres included within the 399 acre portion of Bristol Township desired to be incorporated; the Commissioners of Bristol Township and a group of citizens of Levittown, resident both within and without the territory in question. Their objections are both technical and substantive, but in the view the trial judge takes of the case only one question need be considered, that raised by the Levittown exceptants that only part of their community is included within the proceedings for incorporation. This contention must be sustained and the application accordingly dismissed and refused. This court simply has no

authority to grant the application under such circumstances.

It is well established that judicial proceedings for the incorporation of boroughs are entirely and solely statutory and can be given effect only where the requisite facts appear which properly invoke the powers conferred upon the courts thereby: Borough of West Philadelphia, 5 W. & S. 281; Borough of Little Meadows, 28 Pa. 256; Darby v. Sharon Hill, 112 Pa. 66; Versailles Borough, 159 Pa. 43; Incorporation of Linton Borough, 5 Pa. Superior Ct. 36; Incorporation of Wayne Borough, 12 Pa. Superior Ct. 363; LaPorte Borough, 26 Pa. Superior Ct. 333; Whitehall Borough Incorporation Case, 161 Pa. Superior Ct. 397, 405. The only statutory provision here involved is that contained in section 201 of The Borough Code, as last amended by the Act of July 10, 1947, P. L. 1621, 53 PS §12251, which provides as follows:

"Section 201. Towns and Villages May be Incorporated.—The courts of quarter sessions may incorporate any *town or village* or any two or more *towns or villages* within their jurisdiction into a borough. Every *town or village or towns or villages* so incorporated shall be a body corporate and politic by the name which shall be decreed by the court." (Italics supplied.)

This legislation authorizes the incorporation only of towns or villages, not *parts* of towns or villages. The within application, as indicated in findings nos. 12 and 13, supra, neither wholly includes nor wholly excludes Levittown, a definite "town" in itself within the meaning of the statute; accordingly, this court has no legal power to approve the same.

This conclusion is fortified by certain prior decisions. The first of these is Narberth Borough (1), 16 Pa. C. C. 29, decided by the Montgomery County Court in 1894. The following excerpts from the opinion, at pages

30-31, indicate the basis upon which the application for incorporation was refused:

"There is no jurisdiction under the law to incorporate part of a town or village; and yet this is just what we are asked to do under the present application. The built-up portion of the ground south of the railroad is just as much a part of the town as the territory we are asked to incorporate. . .

"The Act of April 1, 1834, provides for the incorporation of any town or village, not for part of any town or village. Our jurisdiction is statutory, and the Act must be strictly followed . . .

"The Act of Assembly does not contemplate the formation of several boroughs out of the same town. A majority of the resident freeholders of the town or village must ask for the incorporation: Section 2, Act of April 1, 1834. If the construction of the applicants is to prevail, then, although a majority of the resident freeholders may oppose incorporation, the petitioners may carve out a section of the town in such manner as to defeat one of the provisions of the Act, to wit, that the majority sentiment of the town shall control. By such action an undue advantage would be taken of the minority residents within the carved-out district and opposed to incorporation".

That the question just discussed was the controlling reason for the refusal of the incorporation in the cited case is unequivocally demonstrated by the fact that the same court later in the same year did approve a new application for incorporation where the territory involved was expanded to include the entire community: Narberth Borough (2), 16 Pa. C. C. 32, affirmed in 171 Pa. 211.

Another decision of like import is Blawnox Borough, 70 Pitts. L. J. 1076, decided in Allegheny County in 1922 under the applicable provisions of the General Borough Act of May 14, 1915, P. L. 312, chapter II,

art. I, sec. 1 of which also provided for the incorporation of "any town or village". After referring to farm and other lands which should be excluded and the resulting excessive tax burden on the remaining properties, and after observing that the desired purposes of incorporation could be obtained under the powers of a first class township, the court in refusing the application stated, on pages 1077-1078, as follows:

"One fact not noticed at the time of the hearing and not discussed by counsel is the inclusion of part of the village of Montrose in the proposed borough. . . .

"While it has been held in certain circumstances two or more villages may be incorporated as one borough, Alliance Borough, 19 Sup. Ct., 178, Taylor Borough, 160 Pa., 475, and other cases, we are not advised of any decision approving the incorporation of one village and part of another as a borough".

Still another similar decision is In re Borough of West Wyomissing, 35 D. & C. 515, decided by the Court of Quarter Sessions of Berks County in 1938 under The General Borough Act of May 4, 1927, P. L. 519, section 201 of which likewise provided for the incorporation of "any town or village". The court, although indicating that approval of the incorporation would have been desireable, held that an "unsurmountable objection" prevented such approval since it factually appeared that the territory in question included only a part, and not all, of a distinct and recognized separate community. The opinion regarded the legal proposition involved as "well-established", and was mostly concerned with the problem of amendment of the description in the application so as to exclude such part in another village. After concluding that it had no power to allow such an amendment, the court dismissed the application.

Although no appellate court decision has been found which squarely rules the present question, several

decisions have indicated the result. Thus, in Darby v. Sharon Hill, 112 Pa. 66, it was held that a new borough could not be created so as partly to include land taken from an existing borough, unless proceedings be had under the express and special authority conferred by section 3 of the Act of April 1, 1834, P. L. 163, specifically providing for a change of the limits of boroughs incorporated under that act. Compare Whitehall Borough Incorporation Case, 161 Pa. Superior Ct. 397, 403-405, where it was held that it was error to include lands in part already encompassed within another borough and that the petition could not be amended so as to exclude the same.

In Incorporation of the Borough of Edgewood, 130 Pa. 348, the Supreme Court affirmed, on the opinion of the court below, the creation of a borough where one of the fundamental questions involved was whether or not the proposed lines encroached in part upon the boundaries of another village. Factually, the court found that there was no overlap, but the whole tenor of the opinion definitely indicated that the result of the case would have been different had a part of the other village actually been included.

So, also, in Incorporation of Flemington Borough, 168 Pa. 628, the Supreme Court approved the exclusion from the incorporation proceedings by the lower court of territory geographically a part of an adjacent city and held that exceptants who resided within such excluded territory were estopped from questioning such modification of the boundaries since they were thus complaining of the affirmation of "their most material objection" to the proceedings as originally commenced and all other parties desired the incorporation of the balance of the territory.

Moreover, long-established legislative policy and judicial interpretation thereof from another point of view also lend to the impropriety of incorporating

only part of a town or village. Section 206 of The Borough Code, 53 PS §12256, derived from predecessor legislation originating in the Act of April 1, 1863, P. L. 200, authorizes the court to exclude from the incorporation, at the request of an aggrieved party, farm and other large and unsettled lands if, *but only if*, such land "does not properly belong to the proposed borough". See Incorporation of Duquesne Borough, 147 Pa. 58, 67; Incorporation of Swoyerville Borough, 12 Pa. Superior Ct. 118, 125-126; South Connellsville Borough Incorporation, 47 Pa. Superior Ct. 350, 352; Pleasant Hills Borough Incorporation Case, 161 Pa. Superior Ct. 250, 261. The logical reason and purpose behind these statutory provisions would obviously be to prevent the injustice of excessive taxation from being imposed upon owners of large holdings having no substantial relation to any town or village, while at the same time insuring the inclusion of the *whole* town or village considered from the practical realities of the situation so as to embrace all lands properly regarded as appurtenant thereto, whether farm land or not.

As a matter of side interest, it may be pointed out that the presently illogical and meandering boundary of the territory now proposed to be incorporated, insofar as it represents the existing division between Falls Township and Tallytown Borough and arbitrarily places portions of Levittown outside these proceedings, itself probably originated under the application of the aforesaid Act of 1863 to the farm lands existing in the area in 1891. See Tullytown Borough, 1 Dist. R. 292, where a considerable part of Judge Yerkes' opinion, speaking for this court, is concerned with the disposition of requests for exclusion of farm lands under the principles above stated. It is clear that such requests were acted upon according to whether they would militate for or against the

integrity of the community area as a whole in light of conditions then existing.

In view of the foregoing conclusions, it becomes unnecessary to give separate consideration to the various other questions, some of them quite difficult and perplexing, which have been raised in these proceedings. In fairness to all concerned, however, it should be pointed out that both sides to this controversy appear to be acting in utmost good faith. Sound and convincing arguments both for and against the desirability of the within incorporation were presented.

For applicants, the principal motivating forces are the unquestioned need of the citizens of Falls Township for a municipal government which will be more adequately empowered to act in their best interests in the face of the huge local problems posed by the unprecedented growth of population and industry therein within the past five years, coupled with understandable apprehension, because of second class township status, that adjoining municipalities may absorb, or at least dilute, the tremendous industrial tax assessment which the township now enjoys and upon which so many of its municipal services are dependent. A further and also impelling side issue would be the obvious advantage to Danherst Corporation and the ultimate purchasers of its houses to be constructed in the planned Bristol Township extension of the Fairless Hills project to have that whole development located within one municipality.

On the other side of the picture, however, the Levittown exceptants quite realistically oppose any move which would "freeze" or render more insoluble their problem of an integrated community set down without rhyme or reason so as to be included partly within four different municipalities, the boundaries of which are utterly senseless and irrational under present con-

ditions. They have failed, for lack of legal authority, to rectify this unfortunate situation, in part, by proceedings to adjust the municipal lines (Bristol Township Lines Alteration Case, 3 Bucks 163), but justifiably do not wish to see a worsening of the intolerable situation thus obtaining by the addition of the further legal impediments to a solution which the incorporation of the proposed borough would present.

The refusal of the within application will not seriously stand in the way of accomplishment, by other and legally authorized methods, of most of the purposes desired by the public-spirited citizens of Falls Township who went to the trouble of preparing for and instituting these proceedings. Other means undoubtedly can be found to solve many of the problems of local government, provide better representation and impose at least some restriction upon the loss of territory by annexation to other municipalities. Under the circumstances, it would be unwise for this court to make any suggestions in that connection, however.

### Conclusions of Law

1. The within application for incorporation was signed by a majority of the freeholders residing within the limits of the proposed borough, such signatures having been secured within three months preceding the presentation thereof to this court.

2. Due and proper notice by publication of the filing of such application and the right to file exceptions thereto has been given.

3. Levittown is a community or "town" within the meaning of section 201 of The Borough Code.

4. Only a fractional part, and not all, of the "town" of Levittown is included within the territory proposed to be incorporated as a borough.

5. This court has no lawful power or authority to incorporate as a borough a territory which includes

only part of a town or village and not the whole of the territory of and appurtenant to a town or village.

6. The within application for incorporation should be refused.

7. The costs of these proceedings should be paid by petitioners.

*Order Nisi*

And now, this November 14, 1955, for the reasons stated in the foregoing opinion, the within application for the incorporation of a borough to be known as Fallsboro is hereby denied and refused, costs to be paid by petitioners.

This order shall be entered by the clerk as an order nisi and shall become the final order of this court unless exceptions be filed hereto within 20 days from this date. Copies of this order and the accompanying opinion shall be delivered forthwith by the clerk to counsel of record personally or by mail.